[S.F. No. 22942. In Bank. Dec. 21, 1972.]

DIANE HALL, a Minor, etc., et al., Plaintiffs and Appellants, v. UNIVERSITY OF NEVADA et al., Defendants and Respondents.

**COUNSEL**

Bostwick & Rowe and Everett P. Rowe for Plaintiffs and Appellants.

Bronson, Bronson & McKinnon, Michael H. Ahrens, Michael R. Sheehan, Paul H. Cyril and Jerald R. Cochran for Defendants and Respondents.

**OPINION**

**PETERS, J.**—Plaintiffs appeal from an order quashing service of summons and complaint on the defendants, University of Nevada, a corporation, and the State of Nevada.

Plaintiffs filed suit in the San Francisco Superior Court to recover damages for personal injuries alleging that the injuries resulted from a collision in California between their automobile and a car owned by the University and State of Nevada and operated by their agent acting within the scope of his agency.[1]

Service on the university and the state was made pursuant to section 17450 et seq. of the Vehicle Code which provide a method for service on nonresidents who have operated vehicles on the highways of this state, whose agents have done so, or who have consented to the use of their motor vehicles on our highways. With respect to accidents occurring in the state due to such use, the sections provide for service on the Director of Motor Vehicles and notice of service to the nonresidents by registered mail.

---

[1]The special administrator of the deceased agent was also named as a defendant.

The university and the state moved to quash service on the ground that California courts do not have jurisdiction over the State of Nevada and its governmental agencies. The motion was granted.

■ We have concluded that sister states who engage in activities within California are subject to our laws with respect to those activities and are subject to suit in California courts with respect to those activities. When the sister state enters into activities in this state, it is not exercising sovereign power over the citizens of this state and is not entitled to the benefits of the sovereign immunity doctrine as to those activities unless this state has conferred immunity by law or as a matter of comity.

This principle is illustrated by *Parden* v. *Terminal R. Co.,* 377 U.S. 184, 190 et seq. [12 L.Ed.2d 233, 238 et seq., 84 S.Ct. 1207], involving the operation by a state of a railroad in interstate commerce. The court recognized the general rule that a state is immune from suit in federal court by its own citizens and citizens of another state. The court, however, applied an exception to the general rule and held that because it engaged in interstate commerce, the state was subject to the Federal Employers' Liability Act (45 U.S.C. §§ 51-60) and could be sued under the act in the federal courts. The court, quoting from *Maurice* v. *State of California,* 43 Cal.App.2d 270, 275, 277 [110 P.2d 706], held that the state by engaging in interstate commerce by rail and thereby subjecting itself to the federal legislation must be deemed to have waived any right it may have had arising out of the general rule that a sovereign state may not be sued without its consent.[2] (See also *California* v. *Taylor,* 353 U.S. 553, 568 [1 L.Ed.2d 1034, 1043-1044, 77 S.Ct. 1037]; *United States* v. *California,* 297 U.S. 175, 185 [80 L.Ed. 567, 573, 56 S.Ct. 421].)

The principle has also been recognized in state decisions relating to other states. Thus, in *People* v. *Streeper* (1957) 12 Ill.2d 204 [145 N.E.2d 625, 629-630], an injunction proceeding was permitted with respect to property owned by one state in another state, and in *State* v. *Holcomb* (1911) 85 Kan. 178 [116 P. 251, 254], taxation by one state of property therein owned by another state was permitted. Each proceeding was brought in the state where the property was owned. As pointed out in *Streeper,* the "sovereignty of one State does not extend into the territory of another so as to create immunity from suit or freedom from judicial interference." (145 N.E.2d at p. 629; see also *Georgia* v. *Chattanooga,* 264 U.S. 472, 479 [68 L.Ed. 796, 798-799, 44 S.Ct. 369]; *City of Cincinnati* v. *Commonwealth* (1942) 292 Ky. 597 [167 S.W.2d 709, 714]; *State* v. *City of Hudson*

---

[2]The dissenting justices in *Parden* expressly agreed that Congress had the power to condition a state's permit to engage in interstate commerce upon a waiver of sovereign immunity but disputed whether Congress had intended to do so.

(1950) 231 Minn. 127 [42 N.W.2d 546, 548-549]; *State* ex rel. *Anderson* v. *City of Madison* (Mo. 1969) 444 S.W.2d 443, 445; Note, 81 A.L.R. 1518.) Although these cases involve enforcement of property duties rather than in personam jurisdiction and a transitory action, they reflect that state sovereignty ends at the state boundary.

It is urged that as a matter of comity sister states should be immune from liability in California. In *Paulus* v. *State of South Dakota* (1924) 52 N.D. 84 [201 N.W. 867], a citizen of South Dakota was injured while working in a mine owned by that state but located in North Dakota. In holding that as a matter of comity the North Dakota courts should not exercise jurisdiction over its sister state, the Supreme Court of North Dakota relied in part on the fact that the plaintiff was a citizen of South Dakota, and to this extent the case is distinguishable because the plaintiffs herein are California citizens. The court also relied upon the potential embarrassment to the states.

Possible embarrassment may not be held controlling when it is weighed against the policies which warrant the exercise of jurisdiction in the instant case. In upholding the validity of a nonresident motorist statute such as the one under which respondents were served, the United States Supreme Court has pointed out: "Motor vehicles are dangerous machines; and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the State may make and enforce regulations reasonably calculated to promote care on the part of all, residents and non-residents alike, who use its highways. The measure in question operates to require a non-resident to answer for his conduct in the State where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. . . . [T]he State may declare that the use of the highway by the non-resident is the equivalent of the appointment of the registrar as agent on whom process may be served." (*Hess* v. *Pawloski*, 274 U.S. 352, 356-357 [71 L.Ed. 1091, 1094-1095, 47 S.Ct. 632].) The same view has been adopted by the Supreme Court of Nevada in upholding its nonresident motorist statute. (*Kroll* v. *Nevada Industrial Corporation* (1948) 65 Nev. 174 [191 P.2d 889, 893].)

This court has repeatedly emphasized that this state and its residents and taxpayers have a substantial interest in providing a forum where a resident may seek whatever redress is due him. (*Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893, 899, 906 [80 Cal.Rptr. 113, 458 P.2d 57]; *Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1].) The state also has an interest from the point of view of the orderly administration of the laws in assuming jurisdiction in cases

where most of the evidence is within its borders and where a refusal to take jurisdiction may result in multiple litigation.[3] (*Id.*) The presence of the evidence and witnesses in California could, of course, mean that plaintiffs if not permitted to proceed in California could find themselves seriously hampered in proving their case elsewhere.

To hold that the sister state may not be sued in California could result in granting greater immunity to the sister state than the immunity which our citizens have bestowed upon our state government. If a sister state has not abrogated sovereign immunity for tort, it is conceivable that a California citizen would be denied all recovery for an automobile accident in this state even though if the State of California had been the defendant recovery would have been permitted.

Finally, it must be pointed out that in a society such as ours, which places such great value on the dignity of the individual and views the government as an instrument to secure individual rights, the doctrine of sovereign immunity must be deemed suspect. (*National Bank* v. *Republic of China,* 348 U.S. 356, 359-361 [99 L.Ed. 389, 396-397, 75 S.Ct. 423]; *Muskopf* v. *Corning Hospital Dist.,* 55 Cal.2d 211, 214-216 [11 Cal.Rptr. 89, 359 P.2d 457].)

We conclude that the State and University of Nevada are not immune from suit in California for the driving of their agent within the scope of his employment or for the permissive use of their car within this state. This conclusion makes it unnecessary to consider plaintiffs' further contention that the State of Nevada has consented by statute to suit in California.[4]

The order appealed from is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondents' petition for a rehearing was denied January 24, 1973.

---

[3]Apparently, the instant case is proceeding to trial against the special administrator of the estate of the driver.

[4]Plaintiffs urge that Nevada has abrogated sovereign immunity by statute. The state and the university claim that the waiver of immunity was a limited one and that the statutory provisions abrogating immunity should be interpreted as permitting action in the courts of Nevada only. Since we conclude that Nevada does not have immunity from liability for its activities in California, the extent to which Nevada has waived immunity by statute and the extent, if any, to which it can or has limited the statutory waiver is immaterial. Even if we assume that Nevada limited its statutory waiver of immunity to actions in its courts, such limitation would not be applicable to the instant case involving activities in California because the sovereignty of one state does not extend into the territory of another.