**Earl L. BAYS, Administrator of the Estate of Lottie Lou Bays, Deceased, Plaintiff,**

v.

**Richard L. JENKS, et al., Defendants.**

**Civ. A. Nos. 82–0132–H, 82–0133–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Sept. 29, 1983.

James M. Stewart, Jr., Winchester, Va., for plaintiff.

Joseph D. Roberts, Arlington, Va., Francis Prior, Alexandria, Va., Norman A. West, M. Bruce Wallinger, Harrisonburg, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the court on the motions of defendants Richard L. Jenks and the Town of Wardensville, West Virginia, to dismiss or for summary judgment. Plaintiff, administrator of the estates of Lottie Lou Bays and Janice J. Bays, brings these consolidated diversity suits for wrongful death. On the night of November 21, 1981, decedents were traveling near Gore, Virginia, and were struck in a head-on collision by a car driven by defendant Daniel D. Chafin. Chafin had been pursued in a high speed chase by Jenks, the chief and only policeman of the Wardensville, West Virginia Police Department. Jenks earlier had observed the vehicle driven by Chafin while on patrol just outside of Wardensville; he became suspicious after observing that the vehicle displayed no license plates. Chafin then ignored Jenks' signal to pull over and began the high speed journey through West Virginia and into Virginia that ended tragically for the six occupants of the Bays vehicle. Jenks continued the pursuit well beyond the Virginia state line until the fatal collision between the Chafin and Bays automobiles.

Jenks and the Town of Wardensville, West Virginia, now contend that each is immune from liability for any alleged negligence by Jenks in the pursuit. The court notes as an initial matter that the motion before the court is properly treated as one for dismissal under Fed.R.Civ.P. 12(b)(6) or 12(c) as no affidavits, exhibits, depositions, or other factual materials have been submitted by any of the parties. The complaint, then, must be construed in the light most favorable to the plaintiff and its allegations must be taken as true. If the complaint states a colorable claim, the motion to dismiss must be denied. *See* 5 C.

Wright & A. Miller, *Federal Practice and Procedure* § 1357 (1969).

■ Plaintiff submits that West Virginia law should govern this case. West Virginia does not recognize municipal government tort immunity. *See Long v. City of Weirton*, 214 S.E.2d 832 (W.Va.1975). Jenks and Wardensville vigorously maintain that Virginia law clearly rules under the traditional choice of law rule *lex loci delicti*. Virginia, of course, maintains its adherence to the doctrine of municipal tort immunity. *See e.g.*, Note, *Municipal Tort Immunity in Virginia*, 68 Va.L.Rev. 639 (1982). The Supreme Court of Virginia settled this choice of law issue in *McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662 (1979). In this case involving an automobile accident in Tennessee, the Court reaffirmed the *lex loci delicti* principle, holding that the law of the place of the wrong shall govern. *Id.* at 1131, 253 S.E.2d at 664. The wrong here occurred in Virginia where the automobile accident took place. Consequently, Virginia law governs the substantive rights of the parties.

Jenks and the Town of Wardensville both contend that, under Virginia law, they are immune from liability for their torts. This law, however, is not so simple. This case raises the interesting and important question whether a municipal corporation and its officer, admittedly *not* immune under the law of their own state, may become immune under the law of Virginia simply by virtue of crossing the state line into Virginia. As defendants agree in their briefs, Virginia has conferred immunity upon municipal corporations acting in their governmental capacity *in Virginia*. Here we have a *West Virginia* municipal corporation and officer raising the shield of immunity, a shield heretofore successfully raised in Virginia only by Virginia agencies and officers.

Both sides find support in the United States Supreme Court case of *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). This case involved a tort action arising out of an automobile collision in California. One car, owned by the State of Nevada, was driven by an employee of the University of Nevada engaged in official business. A Nevada statute limited any tort action award against the state to $25,000 pursuant to its statutory waiver of sovereign immunity. California courts, on the other hand, had no such limit on suits. Indeed, plaintiffs won a jury verdict in a California court of $1,150,-000 against the employee, the State of Nevada, and the University. The Court held that California courts were not bound to respect Nevada's limited liability in tort and that full compensation, pursuant to California law, could be ordered. *Id.* at 426, 99 S.Ct. at 1191. The Court stated:

> It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so. But if a federal court were to hold, by inference from the structure of our Constitution and nothing else, that California is not free in this case to enforce its policy of full compensation, that holding would constitute the real intrusion on the sovereignty of the States.

*Id.* at 426–27, 99 S.Ct. at 1191. The plaintiff cites *Hall* for the proposition that where sovereign immunity exists in one state, it does not support any claim for immunity in another sovereign's courts. Thus, the plaintiff reasons, a West Virginia municipal corporation and its officer are not constitutionally immune from suits in the courts of another state. As a matter of comity, though, Virginia may respect West Virginia's policy with regard to its abrogation of the immunity doctrine. The defendants argue the contrary. They cite *Hall* to suggest that the plaintiffs may not "project" West Virginia's abrogation of municipal tort immunity into Virginia. In a sense, both sides are correct. *Hall* first of all does not *require* a court applying Virginia law to respect West Virginia law regarding immunity. Second, *Hall* suggests that Virginia may well look to a sister state's law as a matter of comity even though it is not bound by that law.

The defendants have found no cases that apply Virginia's doctrine of sovereign immunity to others than the Commonwealth itself, its municipalities, agencies, and employees. The defendants, however, ask this court to extend immunity to a West Virginia municipal corporation and its officer. Nevertheless, "[w]hen a sister state enters into activities in this state, it is not exercising sovereign power over the citizens of this state and is not entitled to the benefits of sovereign immunity doctrine as to those activities." *Hall v. University of Nevada,* 74 Cal.App.3d 280, 284, 141 Cal.Rptr. 439, 441 (1977), quoting *Hall v. University of Nevada,* 8 Cal.3d 522, 524, 105 Cal.Rptr. 355, 356, 503 P.2d 1363, 1364 (1972), *cert. denied,* 414 U.S. 820, 94 S.Ct. 114, 38 L.Ed.2d 52 (1973). Because West Virginia's sovereignty ended at the West Virginia—Virginia state line, it would be anomalous indeed to apply Virginia sovereign immunity law to a West Virginia municipality and its officer.

In addition, Virginia's immunity doctrine, even assuming *arguendo* that it applied to a non-Virginian municipal corporation, certainly would not apply to immunize Jenks, an employee of a local governmental unit. Such employee, in contrast to a state employee, does not enjoy governmental immunity and is answerable for his or her own acts of simple negligence. *See James v. Jane,* 221 Va. 43, 51, 282 S.E.2d 864, 868 (1980); *Short v. Griffitts,* 220 Va. 53, 55, 255 S.E.2d 479, 480 (1979); *Crabbe v. County School Board,* 209 Va. 356, 359, 164 S.E.2d 639, 641 (1968).

The application of Virginia sovereign immunity doctrine to the Town of Wardensville, again assuming *arguendo* that a West Virginia municipality was within the ambit of immunity granted by Virginia to its own municipalities, remains more troublesome. Nevertheless, several points are clear. The liability of Wardensville, as the plaintiff has alleged, depends upon its vicarious liability arising from the negligence of Jenks. If Jenks were immune, then no negligence could be imputed to Wardensville. While Jenks, as discussed above, is not immune from liability for his own al-leged negligence as an employee of a local governmental unit, vicarious liability for his alleged negligence does not automatically attach to Wardensville. Rather, such liability may or may not attach; recent cases in Virginia have applied an interest-balancing test in determining whether a state employee, whom immunity may shield, is entitled to immunity when he or she is charged with simple negligence in the performance of some duty. *See Bowers v. Commonwealth,* 225 Va. —, 302 S.E.2d 511, 255 VRR 216 (1983); *James v. Jane,* 221 Va. 43, 282 S.E.2d 864 (1980). In *James,* the Court stated:

> Under such circumstances we examine the function [the] employee was performing and the extent of the state's interest and involvement in that function. Whether the act performed involves the use of judgment and discretion is a consideration, but it is not always determinative. . . . Of equal importance is the degree of control and direction exercised by the state over the employee whose negligence is involved.

221 Va. at 53, 282 S.E.2d at 869.

The greater the state's interest and involvement, as well as the state's control and direction of an activity, the more likely it is that immunity should attach. *Id.* The Commonwealth's interest and involvement in a *West Virginia's* municipality's hot pursuit policy and implementation necessarily would be less compelling than its interest in its own such activities. Moreover, it cannot be contended that Virginia exercises any degree of control and direction over the activities of the Police Department of Wardensville, West Virginia. These two factors thus weigh heavily in favor of a finding of no governmental immunity in this case for either Jenks or the Town of Wardensville.

Additional interests support not raising the immunity shield for the defendants. Plaintiff points to a West Virginia statute that requires that municipalities covered by public liability insurance policies not raise the defense of governmental immunity.

W.Va.Code § 33–6–14a (1982). Thus, the plaintiff may well be a third-party beneficiary of this policy. Not only does this statutory requirement appear to waive the defense of governmental immunity, *see* cases collected in Annot., 71 A.L.R.3d 6 (1976), but it also weighs against immunity in the interest balancing test under *James v. Jane.* Virginia would be loath to deny its own citizens the benefits of the public liability insurance policy alleged to be held by Wardensville. In these circumstances, the Commonwealth's treasury is not threatened. In sum, the various factors involved in this case and West Virginia's own abrogation of sovereign immunity combine to support a finding of no such immunity in the context of the alleged negligence of a West Virginia police officer who in hot pursuit crosses the state line into Virginia.

Finally, many facts now in dispute raise the possibility that Jenks either acted outside the scope of his employment by conducting the chase in the circumstances well beyond the state line or that he was grossly negligent by doing so. The Supreme Court of Virginia has stated that either finding removes the sovereign immunity defense. *See e.g., James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980); *Sayers v. Bullar*, 180 Va. 222, 230, 22 S.E.2d 9, 13 (1942). Given the posture of this case, the plaintiff's allegations must be taken as true; consequently, the immunity issue may not be settled as a matter of law.

In sum, under Virginia law, a West Virginia town and its police chief are not immune as a matter of law from liability for the alleged negligence of the police chief in conducting a high speed chase from West Virginia into Virginia. Furthermore, the Supreme Court of Virginia has outlined the standard of care for policemen in the operation of police vehicles. In *Smith v. Lamar*, 212 Va. 820, 824, 188 S.E.2d 72, 74–75 (1972), the court stated:

> The standard of care which would customarily be required of the ordinary motorist ... does not apply to [the police officer]. He was a police officer in hot pursuit of a law violator, and was operat-

ing his vehicle under certain conditions prescribed by law. The standard of care exacted of him is "the standard of care of a prudent man in the discharge of official duties of a like nature under the circumstances".

*See also Virginia Transit Co. v. Tidd*, 194 Va. 418, 73 S.E.2d 405 (1952); *Caldwell v. Parker*, 191 Va. 471, 62 S.E.2d 34 (1950).

For the foregoing reasons, the motion for dismissal or summary judgment shall be denied. An appropriate Order will this day issue.