

**Decided March 12, 1984**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ROSARIO DLG. KUMAGAI and TADAO KUMAGAI, | ) ) | CIVIL ACTION NO. 81-0034 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | DECISION ON MOTION TO |
| | ) ) | STRIKE JURY TRIAL |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, STATE OF HAWAII, UNIVERSITY OF HAWAII SCHOOL OF MEDICINE, and JOSEPH HUMPHREY, M.D., | ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs, husband and wife, initiated this action individually, and as personal representatives of their deceased son, alleging that the Defendants negligently administered medical treatment to their son, and in doing so caused his death. The State of Hawaii, the University of Hawaii School of Medicine and Joseph Humphrey, M.D. (hereinafter collectively referred to as "Hawaii"), now move to strike Plaintiff's jury demand on the grounds that the State of Hawaii's tort claims act does not allow trial by jury on claims against the State without the State's consent. For the reasons set forth herein, the motion is granted.

## FACTS

The facts of this case appear in this Court's previous decision on Hawaii's motion to dismiss (Kumagai v. State ·of Hawaii, et al., Civil Action No. 81-0034 (D.N.M.I. Memorandum Opinion filed July 8, 1983)). The essential facts are repeated here. In 1978, the State of Hawaii contracted with the Commonwealth of the Northern Mariana Islands (hereinafter referred to as "CNMI" or "Commonwealth") to provide medical treatment and services to the inhabitants of the CNMI. From June 13 to June 16, 1978, plaintiffs sought medical treatment for their son from the Defendants. On or about June 16, 1979, the Plaintiffs' son died.

On June 12, 1981, Plaintiffs filed this action alleging that the Defendants negligently failed to examine, diagnose and treat their son and, as a result thereof, caused his death. Plaintiffs' seek $100,000 in damages ·for pain and suffering; $100,000 in general punitive damages; and special damages in an amount to be determined at trial.

On September 25, 1981, Hawaii filed a motion to dismiss on the grounds that the Eleventh Amendment bars suits against states in federal court. On July 8, 1983, this Court, finding the Eleventh Amendment of no force and effect in the CNMI, denied Hawaii's motion.

On December 1, 1983, Hawaii moved this Court to strike Plaintiffs' jury demand. This is the issue now before this Court.

## ANALYSIS

Hawaii contends that the agreement between it and the CNMI conditioned any liability of the State on the limitations of the State Tort Liability Act which disallows jury trials without the State's consent. Paragraph G of the Agreement[1] between the CNMI and Hawaii reads:

> G. Indemnification: The University further agrees to be liable for the torts and wrongful acts of its employees and staff members and to indemnify and hold harmless the Government [Commonwealth] from any and all claims, demands, suits and causes of action whatsoever involving third parties or the Government arising out of or connected with the performance of this Agreement, subject to the limitations contained in the State of Hawaii "State Tort Liability Act," Chapter 662, Hawaii Revised Statutes.

The Hawaii State Tort Liability Act (Hawaii Revised Statutes, § 662-5 (Supp. 1982)) reads:

> Jury. Any action against the State under this chapter shall be tried by the court without a jury; provided that the court, with the consent of all the parties, may order a trial with a jury whose verdict shall have the same effect as if trial by jury had been a matter of right.

- - - - - - - - -

[1] Agreement Between the Government of the Northern Mariana Islands and the University of Hawaii for the Provision of Health Services, September 28, 1978 (hereinafter cited as "Agreement").

Hawaii relies exclusively on these two sections to support its argument that no jury trial can be had as against Hawaii without its consent.

Plaintiffs contend, relying on Nevada v. Hall, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), that Hawaii's sovereign immunity claims have no apllication outside the territorial boundaries of the state, the Agreement notwithstanding. The Agreement, Plaintiffs argue, exists between the Commonwealth government and the State of Hawaii only and cannot be read to affect the rights[2] of third parties. The issue presented to this Court involves the force and effect of the sovereign immunity laws of one state in the court's of another. The Supreme Court has recently addressed this issue in Nevada v. Hall, supra.

In Hall, an employee of the University of Nevada was operating a motor vehicle on California's highways when his car collided with that of respondent therein. It was conceded that the employee was driving a University owned car on official business and that the University was an instrumentality of the State. The employee was killed in the accident.

------

[2] Since the Court finds that Plaintiffs are not entitled to a jury trial against Hawaii based on notions of comity, the Court will not discuss an underlying issue, not addressed by the parties, of whether Plaintiffs claim entitles them to a jury under local law.

The respondent filed suit for damages in a California court naming, among other defendants, the State of Nevada. The trial court granted Nevada's motion to quash service. The California Supreme Court unanimously reversed, holding, as a matter of law, that Nevada was amenable to suit in California's courts (Hall v. University of Nevada, 8 Cal.3d 522, 105 Cal.Rptr. 355, 503 P.2d 1363). The Supreme Court denied certiorari (414 U.S. 820, 94 S.Ct. 114, 38 L.Ed.2d 52). On remand, Nevada asserted its tort liability act and sought to limit its liability to the statutory limit of $25,000. The motion was denied. A subsequent jury verdict of $1,150,000 was upheld by the Court of Appeal; the California Supreme Court denied review.

On certiorari, the United States Supreme Court tackled the issue, admittedly one of first impression, of whether a state must recognize, in its own courts, another state's claims of immunity. The Court, per Justice Stevens, reviewed the Constitution and its history to determine whether support existed for Nevada's sovereign immunity defense. Although the Court found that the framers presumed that prevailing notions of comity would provide adequate protection against the assertion of jurisdiction by one state's courts over a sister state, the majority found no explicit protection embodied in the Constitution. While the Full Faith and Credit clause did require that each state respect the judicial decisions of a sister state, provided the forum state had proper jurisdiction, the clause did not require a state to apply another state's law in violation of its own legitimate

public policy.[3] 99 S.Ct. at 1189. Justice Stevens felt that California's stated policy of compensating those injured on its highways was supported by California's waiver of its immunity for torts committed by its own agents. Id. at 1190. Under the facts of the case, California's courts were not required by the Constitution to respect Nevada's claims of sovereign immunity.

In a closing paragraph, the Court emphasized that, while under no constitutional obligation to do so, a State has the power to recognize, as a matter of comity, the legitimate immunity claims of sister states:

> It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity as to respect any established limits on liability. They are free to do so.

Id. at 1191. This recognition of a state's ability to voluntarily accord immunity is a logical corollary to the Court's decision if the understandings and intentions of the framers are to be given the consideration due; it has been followed in subsequent decisions of federal courts. See e.g., Harris v. City of Chattanooga, 507 F.Supp. 374 (N.D. Georgia 1981)("State of Georgia is free to confer upon its sister state's municipal corporations any vestige of sovereignty which Georgia legislators deem proper").

_ _ _ _ _ _ _ _ _ _

[3] The exact limits of the Full Faith and Credit clause as relating to recognition of a sister state's laws remains unclear after Hall; however, it is clear that no recognition is required where such would conflict with the forum state's public policy. See The Supreme Court-1978 Term, 93 Harv.L.Rev. 59, 189-198 (1979).

948

█ In this case, the language of the Agreement appears quite clearly to be a recognition by the Commonwealth of Hawaii's sovereign immunity. The gesture of comity seems appropriate under the circumstances as the Commonwealth does not allow actions against it to be tried by a jury (6 Trust Territory Code § 251(c)(3)). In fact, a refusal to recognize Hawaii's jury statute would appear inconsistent and discriminatory, possibly raising due process concerns. See The Supreme Court-1978 Term, supra note 3, at 195-196. · The Court finds the Agreement to be a valid accord of immunity under Hall.[4]/

- - - - - - - -

█

[4]/ The conclusion reached herein does not require reconsideration of this Court's previous decision rejecting Hawaii's Eleventh Amendment defense. Eleventh Amendment immunity and sovereign immunity are separate and distinct concepts. Employees v. Department of Public Health and Welfare, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); Litton RCS, Inc. v. Pennsylvania Turnpike Commission, 376 F.Supp. 579, 588 n.18 (E.D.Penn. 1974). See Civil Actions Against State Government, § 4.7. (Shepard's/McGraw-Hill 1982)(distinction cannot be overemphasized). The Eleventh Amendment shields state governments from intrusion from the federal government via the federal judiciary, whereas the doctrine of sovereign immunity prohibits both courts' and plaintiffs from interfering in governmental affairs. See Civil Actions Against State Government, supra; See also Nevada v. Hall, 99 S.Ct. at 1187-1188. Thus a state's waiver of its immunity in its own courts is not interpreted to include a waiver of its Eleventh Amendment immunity. See e.g. Richins v. Industrial Construction, Inc., 502 F.2d 1051, 1055 (10th Cir. 1974); see Civil Actions Against State Government, supra, at § 5.1. While an implied waiver of the Eleventh Amendment immunity has been associated with a similar waiver of sovereign immunity, Parden v. Terminal R. Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), the same does not follow in the unique situation in the Commonwealth where the Eleventh Amendment is not applicable; therefore, even though Hawaii's Eleventh Amendment defense failed, its sovereign immunity defense may be independently reviewed by this Court.

Plaintiffs also contend that the CNMI has no authority to limit the terms of Hawaii's liability as to claims made by persons not "party" to the Agreement; the Agreement at best operates as a limit on Hawaii's liability vis-a-vis claims made by the Commonwealth government. Plaintiffs misunderstand the mechanics of Hawaii's immunity claim. First, in reaching the agreement with Hawaii, the CNMI was acting on behalf of the residents of the Commonwealth and presumably in their interests. Second, the indemnity paragraph of the Agreement is not a restriction on Hawaii's liability, but a recognition of the jurisdictional limits of the Commonwealth's courts.

Finally, in the course of pretrial proceedings, Plaintiffs have raised another issue in need of clarification. Plaintiffs have suggested severing the trials of defendant Hawaii from that of defendant Humphrey should some form of sovereign immunity be found. Today, this Court finds that Hawaii does retain its immunity in this action per the Agreement with the CNMI. No problem arises should Humphrey be found to have been acting within the scope of his employment during the relevant period. Hawaii has assumed liability in such a case, subject to the

///
///
///
///
///
///

provisions of its tort liability act.[5]   However, should Humphrey be found individually liable, another situation would present itself and would have to be addressed at that time.   For the purposes of this motion, the Court addresses the jury issue with respect to the State only and not with respect to Humphrey individually.

The motion to strike the jury trial is granted.

DATED this __12th__ day of March, 1984.

_____
JUDGE ALFRED LAURETA

--------

[5] Any suggestion that Humphrey, as employee, should be severed for jury trial could not be supported as it would effectively subject Hawaii to a jury trial in violation of its recognized sovereignty.   See Benbow v. Wolf, 217 F.2d 203 (9th Cir. 1954); Pittsburgh v. United States, 359 F.2d 564 (3rd Cir. 1966).