Janette CLEMENT, as Personal Representative of the Estate of Urban Lewis Clement, Deceased, Plaintiff–Appellant,

v.

STATE of Indiana; Board of Commissioners of Vanderburgh County, Indiana; Vanderburgh County Sheriff's Department; City of Evansville, Indiana; Commonwealth of Kentucky; Henderson County, Kentucky; Henderson County Sheriff's Department; City of Henderson, Kentucky; Norma C. Miller, as Secretary of the Justice Cabinet; Paul Herron, Jr., as County Judge/Executive of Henderson Kentucky; Kentucky State Police; David L. Armstrong, as Attorney General of Commonwealth of Kentucky, Defendants–Appellees.

No. 82A01–8709–CV–00214.

Court of Appeals of Indiana,
First District.

June 9, 1988.

Charles C. Griffith, Leslie C. Shively, Johnson, Carroll and Griffith, Evansville, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Stephen C. McNutt, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for defendants-appellees.

David V. Miller, James P. Casey, Bowers Harrison Kent and Miller, Evansville, Ronald G. Sheffer, Sheffer, Hoffman, Neel, Wilson and Thomason, Henderson, for Com. of Ky. and Kentucky State Police.

Steven K. Deig, Noffsinger and Deig, Evansville, H. Randall Redding, King, Deep and Branaman, Henderson, for City of Henderson, Kentucky.

Robert H. Hahn, Kevin J. Messmer, Bamberger, Foreman, Oswald and Hahn, Evansville, for Henderson County, Kentucky and Henderson County Sheriff's Dept.

David L. Jones, Jones and Wallace, Evansville, for Paul Herron, Jr., as County Judge/Executive of Henderson, defendant-appellee.

RATLIFF, Chief Judge.

### STATEMENT OF THE CASE

Janette Clement, as Personal Representative of the Estate of Urban Lewis Clement, appeals from the Vanderburgh Superior Court's dismissal of her claims against the Commonwealth of Kentucky; Henderson County Kentucky; the Henderson County Sheriff's Department; and the City of Henderson, Kentucky. We affirm.

### FACTS

Police for the City of Henderson, Kentucky began pursuit in Kentucky of a vehicle driven by David Lee Wiley. The police suspected and believed that the driver of the vehicle had committed the felony of Wanton Endangerment under Kentucky Law. Record, at 193. Kentucky State Police, and Henderson County Sheriff's Department vehicles joined the pursuit in Kentucky. Because the fleeing vehicle was headed north on U.S. Highway 41, Indiana officials were notified. The fleeing vehicle crossed the Kentucky–Indiana border and headed into the City of Evansville, Indiana. When the fleeing vehicle entered the State of Indiana, vehicles from the Indiana State Police, the Evansville City Police, and the Vanderburgh County Sheriff's Department joined and took the lead of the pursuit. The chase ended when the fleeing vehicle rammed into the rear end of a vehicle that was stopped in the north-

bound lane of U.S. Highway 41 at the St. George intersection. The driver of the stopped car, Urban Lewis Clement, was killed by the collision.

On January 15, 1987, Janette Clement, as Personal Representative of the Estate of Urban Lewis Clement, filed a complaint against the State of Indiana; the Board of Commissioners of Vanderburgh County, Indiana; The Vanderburgh County Sheriff's Department; the City of Evansville, Indiana; the Commonwealth of Kentucky; Henderson County, Kentucky; the Henderson County Sheriff's Department; the City of Henderson, Kentucky; Norma C. Miller, as Secretary of the Justice Cabinet; Paul Herron, Jr., as County Judge/Executive of Henderson County, Kentucky; the Kentucky State Police; and David L. Armstrong, as Attorney General of the Commonwealth of Kentucky. The complaint alleged that the various governmental agencies by and through their police officers negligently engaged in the pursuit of the fleeing vehicle which proximately caused the death of Urban Lewis Clement. The complaint alleged also that the police actions were willful and wanton. The defendant Paul Herron, Jr. filed a motion for summary judgment. Herron argued that Clement's complaint was based upon a theory of respondeat superior, and since an agency relationship did not exist between his office and the various police agencies and officers involved in the chase he could not be held liable. The State of Indiana filed a motion for judgment on the pleadings. All the other defendants, except the City of Evansville, filed motions to dismiss for failure to state a claim on which relief could be granted pursuant to Indiana Rules of Procedure, Trial Rule 12(B)(6). The State of Indiana's motion for judgment on the pleadings and all the motions to dismiss alleged that the defendants were immune from suit. Clement filed responses to these motions. The trial court took the motions under advisement, and on May 18, 1987, granted all the motions and entered a judgment thereon against Clement. Clement filed a motion to correct errors which challenged the dismissals and judgments in favor of the City of Henderson, Kentucky; the Henderson County Sheriff's Department; Henderson County, Kentucky; and the Commonwealth of Kentucky.[1] Clement's motion was denied, and this appeal followed.

## ISSUE

While Clement raised several issues, the following issue is dispositive:

Whether the claims against the Kentucky defendants were dismissed properly because the defendants were immune from suit?

## DISCUSSION AND DECISION

The Kentucky appellees filed motions to dismiss pursuant to Indiana Rules of Procedure, Trial Rule 12(B)(6). Under Trial Rule 12(B)(6) a complaint will be dismissed for failure to state a claim upon which relief could be granted if the plaintiff could not recover under any set of facts. *Obremski v. Henderson* (1986), Ind., 497 N.E.2d 909, 910; *Hanover Logansport, Inc. v. Robert C. Anderson, Inc.* (1987), Ind. App., 512 N.E.2d 465, 468; *Wilson v. Palmer* (1983), Ind. App., 452 N.E.2d 426, 429. In determining the propriety of a T.R. 12(B)(6) dismissal, the trial and appellate courts should examine only the pleadings, and should view them in a light most favorable to the non-moving party. *Hanover Logansport*, at 468; *Detterline v. Bonaventura* (1984), Ind. App., 465 N.E.2d 215, 216, *trans. denied*. Thus, the courts should consider all well-pleaded matters within the complaint as true. *Hanover Logansport*, at 468; *Detterline*, at 216.

Clement argues that the trial court erred by dismissing the claims against the Commonwealth of Kentucky, Henderson County, Kentucky, the Henderson County Sher-

---

1. The Commonwealth of Kentucky argues that Clement did not challenge their dismissal in her motion to correct errors. Although Clement's motion is unclear, the memorandum in support thereof clearly challenges the dismissal of the Commonwealth of Kentucky. Therefore, Clement has not waived a challenge to the dismissal and judgment in favor of the Commonwealth of Kentucky.

iff's Department, and the City of Henderson, Kentucky, because they are not immune from suit. Clement argues that neither the laws of Kentucky nor Indiana provide these defendants with immunity from suit. Clement argues that the rules of law found in *Hall v. University of Nevada* (1972), 105 Cal. Rptr. 355, 8 Cal. 3d 522, 503 P.2d 1363 and the case after remand of *Nevada v. Hall* (1979), 440 U.S. 410, 99 S. Ct. 1182, 59 L. Ed. 2d 416, establish that sovereign immunity does not extend beyond a state's borders into another state, and that Kentucky government entities are not immune from suit for torts committed in Indiana. Clement argues also that Indiana law does not provide immunity because the Indiana Tort Claims Act, Indiana Code sections 34–4–16.5–1 et seq., applies only to the governmental agencies within the State of Indiana. Although Clement correctly notes that a state does not have to grant a sister state immunity from suits for torts committed by the sister state's agents outside of the sister state's jurisdiction, *Nevada,* 440 U.S. at 426–27, 99 S.Ct. at 1191, 59 L.Ed.2d at 428–29, she incorrectly applies the rules found in *Hall* and *Nevada* to the facts and law of the present case.

In *Hall,* an automobile owned by the University of Nevada was involved in a collision in California. Diane Hall, a California resident, was injured as a result of the collision. An agent of the University of Nevada was driving the car that collided with, and injured Hall. Hall filed suit against the University and State of Nevada in a California court. The University and State of Nevada moved to quash service of process on the ground that the California court lacked jurisdiction over the State of Nevada and its governmental agencies. The motion was granted. On appeal, the Supreme Court of California reversed the order that quashed service and held that the State of Nevada and its agencies could be sued in California. The court opined as follows:

"We have concluded that sister states who engage in activities within California are subject to our laws with respect to those activities and are subject to suit in California courts with respect to those activities. When the sister state enters into activities in this state, it is not exercising sovereign power over the citizens of this state and is not entitled to the benefits of the sovereign immunity doctrine as to those activities unless this state has conferred immunity by law or as a matter of comity."

*Hall,* 105 Cal.Rptr. at 356, 8 Cal.3d at 524, 503 P.2d at 1364. The California Supreme Court held also that immunity would not be granted as a matter of comity, because this would result in the grant of greater protection to a sister state than was granted to California by its residents. *Id.* 105 Cal. Rptr. at 358, 8 Cal.3d at 526, 503 P.2d at 1366. Accordingly, the case was remanded for trial.

On remand the jury determined that the Nevada driver was negligent and awarded damages of $150,000, and the trial court entered a judgment on this verdict. On appeal the judgment was affirmed by California. Thereafter, the State of Nevada sought review before the United States Supreme Court and argued that a State could claim immunity from suit in the courts of a sister state and could not be sued without consent. *Nevada,* 440 U.S. at 412–14, 99 S.Ct. at 1184–85, 59 L.Ed.2d at 420–21. In response to Nevada's argument that it was immune from suit because it could not be sued in its own courts without consent, the Supreme Court opined as follows:

"This explanation adequately supports the conclusion that no sovereign may be sued in its own courts without its consent, but it affords no support for a claim of immunity in another sovereign's courts. Such a claim necessarily implicates the power and authority of a second sovereign; its source must be found either in an agreement, express or implied, between the two sovereigns, or in the voluntary decision of the second to respect the dignity of the first as a matter of comity."

*Nevada* 440 U.S. at 416, 99 S.Ct. at 1186, 59 L.Ed.2d at 422. The Supreme Court found also that the determination of whether a sister state is granted immunity de-

pends on the law of the forum. *Id.* 440 U.S. at 417, 99 S.Ct. at 1186, 59 L.Ed.2d at 423.

In distilled form the Supreme Court's decision in *Nevada* reveals the following three step analysis for determining whether immunity should be granted to a sister state. First, the court of the forum state must determine whether the Full Faith and Credit Clause of the United States Constitution requires application of the sister state's law. To determine this, the court must examine both the forum and sister state's laws and policies on recovery for injuries and on governmental immunity. If no conflict exists, then the Constitution may compel application of the sister state's law. However, if a conflict exists between the laws and policies of each state, then the Full Faith and Credit Clause does not require the forum state to apply the sister state's law. Second, if the forum state is not required under the Constitution to apply the sister state's law on immunity, then the court must determine whether immunity is granted to the sister state under the laws of the forum state, or is conferred by reason of an agreement between the states. If immunity is not provided to the sister state under the Constitution or through the law of the forum state or by an agreement between the states, then the court reaches the third step of the analysis. Under the third step the court must determine whether the forum state would grant immunity to the sister state as a matter of comity.

In the present case, Clement is suing for an injury which occurred on a highway within the State of Indiana. Indiana law provides protection to those who are injured on its highways and permits suits against both residents and non-residents who cause injuries within Indiana. Furthermore, Indiana permits claims in tort that are based upon the actions of governmental entities and actors, except in specified situations as listed in

Indiana Code § 34–4–16.5–3. Thus, Indiana does not follow the doctrine of sovereign immunity. Kentucky law on the other hand adheres to the doctrine of sovereign immunity. The Kentucky Constitution § 231 provides as follows: "Suits against the Commonwealth—The general assembly may, by law, direct in what manner and in what court suits may be brought against the Commonwealth." Kentucky law also limits the jurisdiction over negligence suits brought against the Commonwealth under the Board of Claims Act, Kentucky Revised Statutes 44.070(5); *Derry v. Roadway Express, Inc.* (E.D.Ky. 1965), 248 F.Supp. 843, 844; *Dept. of Educ. v. Blevins* (1986), Ky., 707 S.W.2d 782, 784. Thus, the policy of Indiana's law appears to favor open compensation, subject to limited and specified immunities, while the policy of Kentucky's law appears to restrict compensation, absent legislative consent. Accordingly, the laws and policies of Indiana and Kentucky conflict. Therefore, the Full Faith and Credit Clause does not require Indiana to apply Kentucky's immunity law.[2]

Since the Constitution of the United States does not require Indiana to grant immunity to the Kentucky appellees, this court must now determine whether immunity is conferred under Indiana law or by agreement with Kentucky. The Kentucky appellees argue that immunity is extended to them through Indiana's Uniform Act on Fresh Pursuit, Indiana Code sections 35–33–3–1 et seq. Section one (1) of this act provides as follows:

"Fresh pursuit—Peace officers of other states—Authority to arrest in Indiana. —Any member of a duly organized state, county or municipal peace unit of another state who enters this state in fresh pursuit, and continues within this state in such fresh pursuit of a person in order to arrest him on ground that he is believed to have committed a felony in the other

---

**2.** This court notes that although the laws and policies of Indiana and Kentucky conflict, the application of Kentucky and Indiana law to their respective governmental entities results in immunity under the facts of this case, when suit is brought in a court of general jurisdiction.

However, this court notes further that Clement could have filed a claim before the Kentucky Board of Claims for negligence of the State of Kentucky actors. Kentucky Revised Statutes 44.070(5).

state, shall have the same authority to arrest and hold such person in custody as has any law enforcement officer of this state to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this state."

Thus, if the Kentucky police chase a person they believed committed a felony in Kentucky into Indiana this statute would apply and the Kentucky police would be extended the same authority as an Indiana law enforcement officer.

■ In the present case, the chase started in Kentucky and the Kentucky police entered Indiana in fresh pursuit of a person that they believed had committed the felony of Wanton Endangerment. Although Clement's complaint suggests that no felony was committed by the person who fled to Indiana, application of the Fresh Pursuit statute does not require proof that a felony actually was committed. Rather, the evidence must indicate the police pursued a person they believed committed a felony. Indiana Code § 35–33–3–5 defines "Fresh pursuit", as follows:

" 'Fresh pursuit' defined.—The term 'fresh pursuit' as used in this chapter shall include fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who reasonably is suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony actually has been committed, if there is reasonable ground for believing that a felony has been committed. Fresh pursuit shall not necessarily imply instant pursuit, but pursuit without unreasonable delay."

The complaint did not state that the police did not believe a felony had been committed and in fact the record establishes the police did believe that the driver of the fleeing vehicle committed a felony. Thus, the Fresh Pursuit statute applied and the Kentucky police had the same authority as an Indiana Law enforcement officer.

The question that remains, however, is whether the authority to enforce laws carries with it the immunity granted in the Indiana Tort Claims Act (ITCA), Indiana Code section 34–4–16.5–3(7). Clement argues that the ITCA applies only to Indiana and its governmental agencies. The Kentucky appellees argue that the ITCA does grant them immunity, and argues the actions of the Kentucky police were within the scope of immunity granted to Indiana police in *Seymour National Bank v. State* (1981), Ind., 422 N.E.2d 1223 *modified in* 428 N.E.2d 203 (1981) *appeal dismissed in* 457 U.S. 1127, 102 S.Ct. 2951, 73 L.Ed.2d 1344 (1982). This court agrees with the Kentucky appellees.

Under Indiana Code section 34–4–16.5–2 terms are defined, in part, as follows:

"(b) 'Employee' and 'public employee' means a person presently or formerly acting on behalf of a governmental entity whether temporarily or permanently or with or without compensation, including members of boards, committees, commissions, authorities and other instrumentalities of governmental entities, and elected public officials. However, the term does not include:

 (1) An independent contractor; or

 (2) An agent or employee of an independent contractor;

except an attorney who performs services for the state or county department of public welfare as an independent contractor.

"(c) 'Governmental entity' means the state or a political subdivision of the state. . . .

"(f) 'Political subdivision' means a:

 (1) County;

 (2) Township;

 (3) City;

 (4) Town;

 (5) Separate municipal corporation;

 (6) Special taxing district;

 (7) State college or university;

 (8) City or county hospital;

 (9) School corporation; or

 (10) Board or commission of one (1) of the entities listed in subdivisions (1) through (9).

"(g) 'State' means Indiana and its state agencies.

"(h) 'State agency' means a board, commission, department, division, governmental subdivision including a soil and water conservation district, bureau, committee, authority, military body, or other instrumentality of the state. However, the term does not include a political subdivision."

Under these sections a volunteer fire department has been determined to be "an instrumentality of local government" for purposes of the ITCA. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1237. The Indiana Supreme Court opined as follows, in *Ayres:*

"The remaining issue is the appropriateness of the trial court's entry of summary judgment in favor of the volunteer fire department. When private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and are subject to the laws and statutes affecting governmental agencies and corporations."

*Id.* at 1235. The *Ayres* court went on to point out that the Indiana legislature had recognized the governmental nature of volunteer fire departments. *Id.* at 1235. Therefore, the Supreme Court found that the volunteer fire department was "an instrumentality of local government and was protected by the Indiana Tort Claims Act." *Id.* at 1237.

 As in *Ayres*, the Kentucky police performed a function that was uniquely governmental in nature, the pursuit and arrest of a suspected felon. The Indiana Legislature has recognized this governmental function and has recognized the importance of apprehending suspected felons while in fresh pursuit. Ind.Code § 35–33–3–1. The Kentucky police in the present case were acting within the scope of that recognized authority. Therefore, this court holds that the Kentucky police were instrumentalities of the State of Indiana and the provisions of the ITCA applied to them.

Under the ITCA a governmental entity or employee acting within the scope of his employment is not liable for a loss that results from the enforcement of a law. Ind.Code § 34–4–16.5–3(7); *Seymour National Bank*, 422 N.E.2d at 1226; *Indiana State Police Dept. v. Swaggerty* (1987), Ind.App., 507 N.E.2d 649, 651, *trans. denied.* In *Seymour National Bank*, an Indiana State Trooper engaged in a high speed chase of a fleeing vehicle. *Id.* 422 N.E.2d at 1225. At times both the Trooper's vehicle and the fleeing vehicle travelled at speeds in excess of 100 miles per hour. The chase resulted in a collision between the Trooper's vehicle and the vehicle of a third party. *Id.* The Indiana Supreme Court held that the chase involved an act of enforcing the law. *Id.*, at 1226. Thus, the immunity section of the ITCA applied and barred suit against the Trooper and the State. *Id.*

On rehearing the Indiana Supreme Court modified its previous decision to clarify the scope of the "enforcement of a law" immunity section, and to answer previously raised issues. *Seymour National Bank*, 428 N.E.2d at 204. Justice Prentice opined as follows:

"The State of Indiana and its employees are not liable for losses resulting from the enforcement of or failure to enforce a law, unless such enforcement constitutes false arrest or false imprisonment. It does not follow, however, that the statute necessarily grants immunity for all acts of law enforcement officers committed while engaged in the enforcement of the law. If the injury in question resulted from the enforcement of a law, immunity is granted to both the governmental entity and to the employee, notwithstanding that the enforcement resulted in a loss that would not have occurred but for the negligent manner in which the duty was performed. However, an employee's acts, although committed while engaged in the performance of his duty, might be so outrageous as to be incompatible with the performance of the duty undertaken. In such a case, it cannot be said that an injury resulting therefrom resulted from the performance of the duty. Such acts, whether inten-

tional or willful and wanton, are simply beyond the scope of the employment." *Id.* The Supreme Court reaffirmed its earlier decision, and held that the Trooper's actions were not so incompatible with the performance of his duty so as to be outside the scope of his employment. *Id.* at 205. The court indicated, however, that if the act were outside the scope of the Trooper's employment, then the Trooper would not be immune and could be held liable, but the governmental entity could not be held liable for the acts of the Trooper that were beyond the scope of his employment. *Id.* at 204.

In *Swaggerty* another Trooper was involved in an accident while assisting in the pursuit of a fleeing vehicle. *Swaggerty,* at 650. The Indiana State Police Department and the Trooper were sued. They moved for summary judgment on the grounds of immunity. *Id.* The trial court denied summary judgment and held, as follows:

> "Therefore, the Court finds that the operation of a police vehicle eleven blocks away from the chase at speeds in excess of 110 miles per hour on the early evening hours of busy thoroughfares and streets might be interpreted by a jury as an act so willful and wanton as to raise it beyond the scope of the employment of the police officer."

*Id.* The Indiana Court of Appeals reversed the trial court and granted summary judgment based on the immunity granted in Ind. Code § 34-4-16.5-3(7). The court stated,

> "The trial court's conclusion that the actions of Trooper Spiller could be construed as being outside the scope of his employment, and thus unprotected by IND.CODE § 34-4-16.5-3(7), is in error. In the very case relied upon by the trial court in denying the Department's and Trooper Spiller's motion for summary

judgment, our Supreme Court upheld the granting of a motion for summary judgment in favor of an Indiana State Trooper who had collided with another vehicle while involved in a high speed chase, stating that IND.CODE § 34-4-16.5-3(7) expressly provided immunity in such a situation. *Seymour Natl. Bank, supra,* at 205. *See also, Seymour Nat. Bank v. State* (1981), Ind., 422 N.E.2d 1223, 1224."

*Id.* at 651.

■ As in *Seymour National Bank* and *Swaggerty,* the loss in the present case resulted from a police chase. The actions taken were within the authority granted to the Kentucky and Indiana police. In Count One of her complaint Clement argues the actions were negligent. Even if all the allegations of negligence in Count One are taken as true, the Kentucky appellees were immune from suit under the ITCA. *Seymour National Bank,* 422 N.E.2d at 1226; *Swaggerty,* at 651. Under Count Two Clement alleges that the actions were willful and wanton. Again, assuming these allegations are true, the Kentucky appellees could not be held liable. When the employee's actions are so outrageous as to place them outside the scope of employment the governmental entity cannot be held liable. *Seymour National Bank,* 428 N.E.2d at 204. Therefore, the trial court properly dismissed the claims against the Kentucky appellees, and the judgment against Clement is affirmed.[3]

Affirmed.

ROBERTSON and BUCHANAN, JJ., concur.

---

3. This court notes that even if the Kentucky police were not instrumentalities of the State of Indiana within the meaning of the Indiana Tort Claims Act immunity still would be granted to the Kentucky appellees. Under the doctrine of comity a privilege is granted out of deference and good will to another sovereign. *State of Florida ex rel. O'Malley v. Department of Insurance* (1973), 155 Ind.App. 168, 176-77, 291 N.E. 2d 907, 912; *Lee v. Miller County, Arkansas* (5th Cir.1986), 800 F.2d 1372, 1375. The primary value of comity is to promote cooperation and maintain harmony. *Lee,* at 1375. In the present case, Indiana and Kentucky both have laws, which under these facts, would provide immunity in court to the pursuing police. Indiana has also recognized the need to pursue fleeing felons by giving sister states the authori-

ty to continue fresh pursuit into Indiana. Ind. Code § 35–33–3–1. This statute is designed to promote cooperation in the apprehension of suspected felons fleeing from other jurisdictions. This court recognizes our State's policy of cooperation and holds that the Kentucky appellees would also be immune under the present facts as a matter of comity.