**PROGRESSIVE CONSTRUCTION AND ENGINEERING CO., INC., Appellant,**

v.

**INDIANA AND MICHIGAN ELECTRIC CO., INC., Appellee.**

**No. 77A01–8805–CV–161.**

Court of Appeals of Indiana, First District.

Feb. 15, 1989.

Eric A. Frey, Frey, Hunt, Hassler & Lorenz, Terre Haute, James R. Monk, Sullivan, for appellant.

R. Steven Johnson, Sacopulos, Johnson & Hahn, Terre Haute, E.D. Powell, Powell, Springer & Elmore, Sullivan, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Progressive Construction and Engineering Co., Inc. appeals the judgment of the trial court granting summary judgment in favor of Indiana and Michigan Electric, Co., Inc. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## FACTS

On April 14, 1976, Indiana and Michigan Electric Co., Inc. (I and M) and Progressive Construction and Engineering Co., Inc. (Progressive) entered into a contract which provided that Progressive would furnish labor, equipment, material, supervision, insurance coverage and other items required to perform miscellaneous services requested by I and M's construction manager or other authorized personnel at I and M's Breed Precipitator Project near Fairbanks, Indiana. Incorporated into this contract was an indemnity clause requiring Progressive to indemnify, hold harmless, and defend I and M from all actions, claims, demands, liability, loss, damage or expense of any kind including attorney's fees incurred by I and M by reason of bodily injury to any person arising out of the work to be performed under the contract.

George Timothy Kruse was on Progressive's payroll. He was assigned to work on the I and M project by Progressive after I and M requested that a teamster driver be available at the site. On April 4, 1978, Kruse was driving an I and M truck when he struck the vehicle of James and Dorothy Whitaker from behind. Dorothy was injured in the accident. In a separate action Dorothy and James Whitaker filed suit against Kruse, American Electric Power Service Corporation, I and M, and Progressive. Prior to trial I and M and the Whitakers entered into a covenant not to sue. The jury entered a verdict in favor of Progressive. However, on appeal this court reversed and remanded the cause for a new trial. *See, Whitaker v. Kruse* (1986), Ind. App., 495 N.E.2d 223. Subsequently, Progressive entered into a settlement agree-

ment with Whitaker, and the action was concluded.

Prior to the original trial, I and M had filed a cross-claim against Progressive based on the indemnification clause contained in the contract between I and M and Progressive, seeking idemnification for any sums it was obligated to pay to Whitaker. In response to this claim, Progressive contended that Kruse was acting as an agent of I and M and was not under Progressive's control at the time of the collision. Progressive also claimed that the indemnification clause was void and unenforceable and in violation of public policy as articulated in Indiana Code section 26–2–5–1. Progressive further claimed that the contract was one of adhesion and was unconscionable, and therefore, was unenforceable. On July 13, 1982, I and M filed a motion for summary judgment on its indemnity claim. On November 17, 1987, the trial court entered findings of fact and conclusions of law and entered judgment granting summary judgment in favor of I and M. Further facts will be recited as necessary to the following discussion.

## ISSUES

Progressive raises four issues for review.

1. Did an issue of fact exist precluding the entry of summary judgment regarding the employment relationship, if any, between I and M and Kruse?

2. Did an issue of law and fact exist precluding summary judgment regarding the enforceability of the indemnity clause under the provisions of Indiana Code section 26–2–5–1(4)?

3. Did an issue of fact exist precluding the entry of summary judgment regarding the unconscionability of the indemnification agreement?

4. Did an issue of fact exist precluding the entry of summary judgment regarding the voluntariness and reasonableness of I and M's payment to Whitaker?

## DISCUSSION AND DECISION

 In reviewing the granting of a motion for summary judgment, our standard of review is well settled. We consider the contents of the pleadings, affidavits, answers to interrogatories, responses to requests for admission, and depositions in a light most favorable to the non-moving party to determine whether any genuine issue of material fact exists, and whether the moving party is entitled to judgment as a matter of law. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234; *Chambers v. Cent. School Dist.* (1987), Ind.App., 514 N.E.2d 1294, 1296; *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 729, *trans. denied.* When a motion for summary judgment is granted, the non-moving party is denied his day in court; therefore, the trial court's decision must be carefully scrutinized on appeal. *Ayres,* 493 N.E.2d at 1234. In reviewing the granting of a motion for summary judgment this court stands in the shoes of the trial court and applies the same applicable standard. *Chambers,* 514 N.E.2d 1294, 1296; *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143, *trans. denied.*

*Issue One*

Progressive first contends that a genuine issue of fact exists in the present case regarding the employment relationship, if any, between Kruse and I and M. Progressive notes that while the affidavits offered in support of I and M's motion for summary judgment indicate that Kruse was in the employ and under the control of Progressive at the time of the accident, the affidavit of V.G. Potter, Jr., the secretary/treasurer of Progressive, recited facts indicating that I and M exerted direct and ultimate control over Kruse while Kruse was assigned to the I and M site. Therefore, according to Progressive the trial court erred in granting summary judgment in favor of I and M.

I and M claims that the affidavit of V.G. Potter was not properly before the court in the summary judgment proceedings and that therefore, given the absence of any

conflicting factual allegations, the trial court's only option was to grant I and M's motion. I and M further contends that the opinion of the Court of Appeals in *Whitaker v. Kruse* (1986), Ind.App., 495 N.E.2d 223, precludes Progressive from arguing that Kruse was not an employee of Progressive at the time of the collision. I and M is mistaken on both claims.

V.G. Potter's affidavit was properly before the trial court in the summary judgment proceedings. I and M filed its motion for summary judgment against Progressive on July 13, 1982. On July 23, 1982, Progressive moved for summary judgment against Dorothy Whitaker and, in support of that motion, attached the affidavit of V.G. Potter, Jr. On July 27, 1982, the trial court ordered that the I and M summary judgment proceedings be severed from the action between Whitaker and Progressive. As part of that order the court stated "... all allied documents and pleadings filed are now made a part of the supplemental cause of action C–79–299–A, all as per stipulation, copy stipulation." Record at 41.[1]

■ I and M argues that the holding in *Larr v. Wolf* (1983), Ind.App., 451 N.E.2d 664, *trans. denied,* is applicable to the present situation. In *Larr,* an affidavit opposing a motion for summary judgment was tendered on the day of the hearing on that motion. The trial court held and this court agreed that the affidavit was not timely filed under the provisions of Indiana Rules of Procedure, Trial Rule 56(C) which allows adverse parties to serve opposing affidavits prior to the day of the hearing. *Id.* at 665. Clearly I and M's proposition that V.G. Potter's affidavit is subject to the same determination as the affidavit tendered in *Larr* is erroneous. Potter's affidavit filed July 13, 1982, was one of the "allied documents" made a part of the summary judgment proceedings by the court order of July 27, 1982. The hearing on I and M's motion for summary judgment was held on September 23, 1987. Therefore, V.G. Potter's affidavit was timely

filed and was properly before the trial court during the summary judgment proceedings.

■ I and M next claims that this court's decision in *Whitaker v. Kruse* (1986), Ind. App., 495 N.E.2d 223, prevents Progressive from now claiming that Kruse is not an employee of Progressive because, "the Court of Appeals upheld liability against Progressive and Kruse which liability necessarily had to be imposed by virtue of the doctrine of *respondeat superior."* Appellee's brief at 16. We note that the court of appeals reversed a jury verdict in favor of Progressive and Kruse rather than "upholding liability against them." The basis for reversing the jury's verdict was a jury instruction which misstated the law regarding the original tortfeasor's liability in the face of subsequent inadequate or negligent medical care. The issue of Kruse's employment relationship was not, nor could it have been appealed by Progressive at this juncture in the proceedings. Therefore, I and M's argument that Progressive is now precluded from claiming that Kruse was under the sole control of I and M at the time of the accident is without merit.

■ I and M also claims that a certain statement made in Progressive's brief admitting that Kruse was negligent should prevent Progressive from maintaining that I and M was liable for the damages suffered by Whitaker. I and M is mistaken. The statement which I and M attempts to characterize as an admission reads as follows:

"Progressive submits that there existed a genuine issue of material fact regarding the agency status of Kruse who was admittedly negligent in the operation of I and M's truck at the time of the Whitaker accident."

Appellant's brief at 33–34. Progressive is admitting only that Kruse was negligent, nothing more. The statement does not go so far as to admit liability for that negli-

---

1. We note that the introductory language to the trial court's order is somewhat confusing in that it initially appears that only I and M's allied documents were to be made a part of the subsequent cause of action. However, the order itself clearly states that *all* allied documents, including those of Progressive, were to be made part of the summary judgment proceeding.

gence. Therefore, Progressive's statement will not be seen as a bar to litigating the issue of liability for the damages caused by Kruse.

The indemnification clause in question reads in pertinent part as follows:

"Contractor hereby agrees to indemnify, hold harmless, and defend Owner from and against any and all actions or causes of action, claims, demands, liabilities, loss, damage or expense of whatsoever kind and nature, including attorneys' fees, which Owner may suffer or incur by reason of bodily injury, including death, to any person or persons, or by reason of damage to or destruction of any property, including the loss of use thereof, arising out of or in any manner connected with the work to be performed hereunder, or which Owner may sustain or incur in connection with any litigation, investigation, or other expenditures incident thereto, including any suit instituted to enforce the obligation of this agreement of indemnity, whether or not due in whole or in part to any act, omission, or negligence of Owner, or any of its representatives or employees (except insofar as such indemnity arising out of such injury or damage caused by the sole negligence of Owner or such representatives or employees may be found to be contrary to law, in which case this agreement of indemnity shall in all other respects be and remain effecting and binding)."

Supp. Record at 18–19. This clause excludes coverage of any injury or damage caused by the sole negligence of I and M or its representatives or employees. Progressive contends that the facts recited in V.G. Potter's affidavit were sufficient to defeat I and M's motion for summary judgment. According to Progressive, the facts alleged in Potter's affidavit indicate that Kruse was under the exclusive control of I and M at the time of the collision and that, therefore, the damage suffered by Whitaker was the result of the sole negligence of an I and M representative. Therefore, Progressive argues, I and M's payments to Whitaker fall outside the purview of the indemnity clause.

 Progressive is essentially arguing the borrowed servant doctrine which states that "an employee while generally employed by one party, may be loaned to another in such a manner that the special employer may be responsible for the acts of the employee under the doctrine of *respondeat superior." New York Cent. R.R. Co. v. NIPSCO* (1966), 140 Ind.App. 79, 84, 221 N.E.2d 442, 446. To determine which employer is liable for the servant's negligence three related analyses have been developed: (1) the "whose business" test which seeks to discern whether the tortfeasor was furthering the business of the special or general employer at the time of the collision; (2) the "control" test which attempts to determine which employer had the right to control the specific act in question; and (3) the "scope of business" test which attempts to determine if the work being done by the servant is within the scope of the business of the special employer, if so then the liability for the servant's acts lies with the special employer. *Johnson v. Motor Dispatch, Inc.* (1977), 172 Ind.App. 285, 292, 360 N.E.2d 224, 229, *trans. denied; New York Cent. R.R.,* 140 Ind.App. at 87–90, 221 N.E.2d at 446–449. Generally, the question of which employer is liable for the servant's negligence is a question for the trier of fact. *Johnson,* 172 Ind.App. at 291, 360 N.E.2d at 228; *New York Cent. R.R.,* 140 Ind.App. at 86, 221 N.E.2d at 446. In determining whether a genuine issue of material fact precluding summary judgment is in existence, all doubts must be resolved against the moving party and facts set forth by the party opposing the motion must be accepted as true. *Johnson,* 172 Ind.App. at 287, 360 N.E.2d at 226.

Potter's affidavit contains the following factual allegations:

"4. That following the execution of said contract, Progressive assigned to the project certain personnel to carry out the miscellaneous services requested by I and M. I and M, acting by and through its construction managers and agents, determined that it was necessary to have a teamster driver on the jobsite who

could pick up materials, run errands and drive trucks for I and M. Progressive assigned to the project the defendant, George Timothy Kruse ('Kruse') who was a teamster employee of Progressive. Kruse was maintained on the regular payroll of Progressive and paid by Progressive. However, with respect to the direct and immediate control over the activities of Kruse, I and M would assign to him each day certain tasks for him to perform on behalf of I and M and also assigned him to one of I and M's trucks which was located at the jobsite for him to drive in the course of his teamster duties.

"5. I and M had the ultimate control over the activities of Kruse, had the right to control and did, in fact, control his work assignments either by ordering him directly to perform actions or by ordering Progressive's superintendent, Art McDermott, to direct Kruse to perform the actions requested by I and M.

"6. I and M further controlled the handling of equipment and vehicles on the jobsite and located security guards at the jobsite who would check equipment and personnel in and off the site. Thus, for Kruse to leave the premises or utilize any equipment on the premises, he was required by I and M to obtain permission from I and M's security guards to come and go from the jobsite.

"7. On the date of the accident in question, April 14, 1978 (sic), Kruse was assigned the responsibility by I and M to drive its truck into Terre Haute to pick up supplies and materials needed by I and M for the construction of the Breed Precipitator plant. While driving in Terre Haute, the accident involving the Whitaker vehicle occurred.

"8. I and M had a right under the contract and its application to determine whether or not Kruse was a suitable termster (sic) driver and in the event that I and M was not satisfied with Kruse's performance, it had the right to direct Progressive to file a grievance, with cause with Local 144 of the Teamsters, in order to have him reassigned to other work.

"9. Under affiant's understanding of the status of Kruse, he was an employee of Progressive, in its general service, but was transferred to the service of I and M for the purpose of carrying out I and M's wishes and subject to its ultimate control. In the event a dispute developed between I and M and Progressive as to what Kruse was directed to do, Progressive would not have the right to control Kruse's actions but, rather, the ultimate control was in I and M."

Record at 7–8. These allegations indicate that on the date of the collision Kruse was driving an I and M vehicle while on an I and M errand in response to instructions given by an I and M representative. Under any of the three tests previously noted a jury could find that I and M was solely liable for the negligence of Kruse and that Progressive was not required to indemnify I and M for the payment made to Whitaker. Therefore, the trial court erred in granting summary judgment in favor of I and M.

*Issue Two*

Progressive next claims that the indemnity clause was void and unenforceable under the provisions of Indiana Code section 26–2–5–1. Progressive exerts some effort in its appellate brief to persuade this court that I.C. § 26–2–5–1 is applicable to the present factual situation. I and M does not contest the applicability of the statute, but denies that this idemnification clause violates the provisions of I.C. § 26–2–5–1. Since both parties apparently agree that the statute is applicable, we need not address that question here. I.C. § 26–2–5–1 reads as follows:

"All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract except those pertaining to highway contracts, which purport to indemnify the promisee against liability for:

(1) death or bodily injury to persons;

(2) injury to property

(3) design defects, or

(4) any other loss, damage, or expense arising under either (1), (2), or (3); from the sole negligence or wilful misconduct

of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, are against public policy and are void and unenforceable."

In the present case, the indemnification clause includes a phrase which requires Progressive to indemnify I and M for any damages, "whether or not due in whole or in any part to any act, omission or negligence of Owner [I and M] or any of its representatives or employees." Supp. Record at 18. According to Progressive this phrase violates provision (4) of I.C. § 26–2–5–1. However, Progressive fails to note that the foregoing phrase continues as follows:

"... except insofar as such indemnity arising out of such injury or damage caused by the sole negligence of Owner or such representatives or employees may be found to be contrary to law, in which case this agreement of indemnity shall in all other respects be and remain effecting and binding."

Record at 18–19. Clearly the parties were aware of the fact that an indemnification clause covering the sole negligence of I and M would be contrary to law and, therefore, weakened the indemnification clause accordingly. Because the indemnification clause does not violate provision (4) of I.C. § 26–2–5–1, the trial court correctly granted summary judgment in favor of I and M on this issue.

*Issue Three*

Progressive next claims that an issue of fact existed as to whether or not the indemnification agreement was unconscionable and that, therefore, the trial court erred in granting summary judgment in favor of I and M. A contract will be deemed unconscionable when a great disparity in bargaining power exists which leads the weaker party to sign a contract unwillingly or without being aware of its terms. *Dan Purvis Drugs, Inc. v. Aetna Life Ins. Co.* (1980), Ind.App., 412 N.E.2d 129, 131, *trans. denied.* The contract must be "such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would

accept." *Dan Purvis Drugs, Inc.*, 412 N.E.2d at 131, *citing Weaver v. American Oil Co.* (1971), 257 Ind. 458, 462, 276 N.E. 2d 144, 146.

In Potter's affidavit the following allegation is made:

"3. That at the time said contract was entered into between Progressive and I and M, Progressive was required to sign said contract without being able to negotiate or alter any of the terms and conditions of the General Conditions for the performance of the work under the contract by Progressive with the sole exception of the hourly rates of pay which Progressive would be paid by I and M. The remaining conditions, including the provisions of paragraphs 16 and 22 at pages 10 and 13, respectively, of the General Conditions, were non-negotiable and I and M utilized its superior bargaining position as the owner of the project to compel Progressive to execute its contract to perform miscellaneous services in accordance with the General Conditions."

Record at 7. While Potter claims that I and M was in a position of "superior bargaining power" due to its position as owner of the project, this by no means translates into a "great disparity" of bargaining power. In addition, Indiana Rules of Procedure, Trial Rule 56(E) states:

"Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

(emphasis added). Potter's allegation is of a conclusory nature and as such is insufficient to establish facts necessary to demonstrate the existence of a genuine issue of fact as to the unconscionability of the indemnity clause. *See, McMahan v. Snap On Tool Corp.* (1985), Ind.App., 478 N.E.2d 116, 122. Furthermore, Progressive makes no attempt to show that it sought to have the I and M contract altered in any way. Therefore, it is mere conjecture to assert that I and M would have refused to modify

the terms of the contract if requested to do so. *See, Houin v. Bremen State Bank* (1986), Ind.App., 495 N.E.2d 753, 758. For the foregoing reasons we hold that the trial court did not err in granting summary judgment in favor of I and M on the issue of the unconscionability of the indemnity clause.

*Issue Four*

Progressive's final contention is that summary judgment in favor of I and M was inappropriate because a genuine issue of fact exists as to whether or not I and M's payment to Whitaker was merely voluntary. Furthermore, no determination was made concerning the reasonableness of the amount paid by I and M to Whitaker. Progressive is correct in noting that indemnity does not cover losses for which the indemnitee is not liable, but which he voluntarily pays. *Sink and Edwards, Inc. v. Huber, Hunt, and Nichols, Inc.* (1984), Ind.App., 458 N.E.2d 291, 297. However, as stated in *Sink,* it is also true that the indemnitee's decision not to proceed to judgment provides no basis for the indemnitor's assertion that a settlement constituted a voluntary payment, but that a question as to whether the settlement was fair and reasonable remains. *Id.*

In the present case, the trial court made no findings and made no final judgment regarding I and M's payment to Whitaker. Rather, the trial court set a date for a later hearing on the issue of damages. Therefore, given that the evidence before this court is insufficient to make an informed decision as to the possible voluntary nature of I and M's payment, and given the fact that the trial court reserved the issue of damages for later determination, we decline to address substantively the issue herein. We do note, however, that if after a trial on the merits, the trial court finds that I and M was not in exclusive control of Kruse at the time of the collision and that, therefore the indemnity clause does cover Kruse's negligence, the trial court must then determine whether or not I and M's payment to Whitaker was voluntary and, if the payment was not voluntary, whether or not the payment was fair and reasonable.

Affirmed in part, reversed in part, and remanded. Costs to be assessed as follows:

Two thirds against appellants.

One third against appellees.

ROBERTSON and STATON, JJ., concur.