**Joseph LOGESTAN, Jr.,**
**Appellant–Plaintiff,**

v.

**The HARTFORD STEAM BOILER**
**INSPECTION AND INSURANCE**
**CO., Appellee–Defendant.**

No. 82A04–9301–CV–8.

Court of Appeals of Indiana,
First District.

Dec. 30, 1993.

Theodore Lockyear, James A. Kornblum, Lockyear & Kornblum, Evansville, for appellant-plaintiff.

Donald R. Wright, Wright, Evans & Daly, Evansville, R. Dennis Withers, Robins, Kaplan, Miller & Ciresi, Atlanta, GA, for appellee-defendant.

NAJAM, Judge.

## STATEMENT OF THE CASE

Joseph Logestan, Jr. appeals from a jury verdict in favor of Hartford Steam Boiler Inspection and Insurance Company ("Hartford") in a negligence action Logestan brought against Hartford. Logestan claimed that a Hartford employee negligently inspected a boiler which exploded and injured him. On appeal, Logestan argues that the trial court erroneously submitted jury instructions which permitted the jury to find Hartford immune from liability. We agree, and we reverse and remand for a new trial.

## ISSUE

We restate the issue presented as whether Hartford is immune from liability as a matter of law.

## FACTS

On October 25, 1989, Logestan was employed by Mid–States Rubber Products, Inc. in Princeton, Indiana, and was severely injured when a boiler operated by Mid–States exploded. The boiler had been last inspected on July 18, 1989, by Robert VerSteeg, a Hartford employee who was licensed by the State of Indiana as a "special inspector" to perform annual safety or "certificate" inspections for regulated boilers, which are required by law.

VerSteeg's authority to conduct inspections as a special inspector was derived from his employment with Hartford, which is designated an "inspection agency" by statute as an insurance company in the business of insuring and inspecting regulated boilers. A special inspector does not hold a general commission to conduct certificate inspections but is only authorized to inspect boilers insured by his employer.

Logestan filed a personal injury action against Hartford on the theory that Hartford was liable for VerSteeg's negligent inspection of the boiler. The court submitted instructions to the jury on the issue of Hartford's immunity, and the jury returned a verdict in favor of Hartford. Logestan appeals. We will state other material facts where appropriate.

## DISCUSSION AND DECISION

Both Logestan and Hartford dispute whether Instruction No. 17,[1] which provided that Hartford may be entitled to governmental immunity, was a correct statement of the law. They also dispute whether Hartford was immune from liability under Indiana Code § 34–4–12.7–2 for performing an inspection in connection with the is-

1. That instruction stated:
   The annual inspection of a regulated boiler by a special inspector licensed by the State is an activity for which Indiana provides immunity from legal liability.
   If you find Mr. VerSteeg was acting as an employee of the State in performing the annual state certificate inspection of the subject boiler on July 18, 1989, then Mr. VerSteeg and therefore Hartford Steam Boiler Inspection and Insurance Company would not be liable for any loss resulting from failure to make an inspection, or making an inadequate or negligent inspection, of any property to determine whether the property complied with or violated any law or contained a hazard to health or safety.
   Record at 1746.

suance or renewal of a casualty insurance policy.[2]

■ However, our resolution of this appeal turns on whether the issue of immunity under either statute should have been submitted to the jury. Statutory immunity is a question of law for the court's determination. *Peavler v. Monroe County Board of Commissioners* (1988), Ind., 528 N.E.2d 40, 46. Extended factual development may be required to decide the legal question of immunity. *Id.* "[T]he essential inquiry is whether the challenged act is the type of function which the legislature intended to protect with immunity." *Id.* Thus, in our review we must consider the facts and determine whether, as a matter of law, Hartford was immune from liability under either statute for VerSteeg's inspection of the boiler which injured Logestan.[3]

### A. Immunity under the Tort Claims Act

■ Logestan and Hartford first disagree whether VerSteeg and Hartford were entitled to immunity under our Tort Claims Act, Indiana Code § 34-4-16.5-3(11). In preserving its objection to Instruction No. 17, Logestan argued both that the instruction was an incorrect statement of the law and that the issue should have been decided by the court. Logestan contends that there is no evidence in the record to show that VerSteeg, who was employed by Hartford as a "special inspector," was a State employee for whose actions Hartford could not be held liable. Logestan is correct.

There are three classes of inspectors licensed to inspect regulated boilers in the State of Indiana. Under the administrative rules adopted by the Indiana Boiler and Pressure Vessel Rules Board, a "special inspector" is an inspector, other than a "state inspector," in the regular employ of an authorized inspection agency.[4] *See* IND.ADMIN.CODE tit. 680, r. 1–1–2(6) (1992). A "state inspector" is any inspector employed by the Indiana Boiler and Pressure Board. IND.ADMIN.CODE tit. 680, r. 1–1–2(5) (1992). An "owner or user inspector" is a professional engineer who is regularly employed by the owner or user of a regulated boiler qualifying as an inspection agency. *See* Record at 1430; IND. CODE § 22–15–6–6(c)(2).

All three types of inspectors must meet the same professional qualifications to inspect regulated boilers in this state. Record at 1430. However, Anthony Meiring, Chief Inspector for the Boiler and Pressure Division of the State Building Commission, explained the difference between a special inspector and a state inspector. Meiring testified that a special inspector's commission indicates the inspector is employed by an insurance company, not by the State of Indiana. Record at 1501–02. Meiring stated that VerSteeg does not receive any state benefits and that as Chief Inspector he had no control over VerSteeg's activities in inspecting boilers. Record at 1502–04. VerSteeg's own identification card states that he is an employee of Hartford. Record at 974 (Defendant's Exhibit 72).

Hartford relies upon *Ayres v. Indian Heights Volunteer Fire Department* (1986), Ind., 493 N.E.2d 1229, for the proposition that when VerSteeg conducted certificate inspections as a State commissioned special inspector, VerSteeg was an "instrumentality" or an employee of the State. We cannot agree. *Ayres* established the

---

2. Instruction Nos. 3 and 4 instructed the jury regarding immunity under this statute. *See* Record at 1725–27.

3. Hartford also makes the alternative argument that Instruction No. 17 was properly submitted to the jury and was not erroneous because under the borrowed servant doctrine, the question of which employer is liable for an employee's negligence is a question for the trier of fact. *See Progressive Construction and Engineering Co. v. Indiana and Michigan Electric Co.* (1989), Ind.App., 533 N.E.2d 1279, 1284. As shown in our analysis below, VerSteeg is an employee of Hartford, and is neither an employee of the State nor an employee of both the State and Hartford. Thus, whether immunity exists under the Tort Claims Act is a question of law for us to decide.

4. An "inspection agency" is "an insurance company engaged in insuring and inspecting regulated boilers and pressure vessels in Indiana." IND.CODE § 22–15–6–4(a)(1).

rule of law that "[w]hen private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and are subject to the laws and statutes affecting governmental agencies and corporations." *Id.* at 1235. In holding that a township's volunteer fire department is an instrumentality of the state and not an independent contractor, our supreme court concluded that firefighting is a service that is uniquely governmental. *Id.* The court observed that it was not aware of any private enterprise in the business of fighting fires, a fact, in its opinion, which distinguishes a volunteer fire department from private enterprises that pave roads or build schools and that the government sometimes calls upon to fulfill its governmental duties to the public. *Id.*

We decline to extend the definition of an "employee" under the Tort Claims Act to include special inspectors employed by insurance companies which conduct state authorized inspections. Unlike firefighting, the activity of inspecting regulated boilers is not a "uniquely governmental" function. Our statutes authorize not only "state inspectors" but privately employed "special inspectors" and also "owner or user inspectors" to conduct boiler inspections for certificates of operation. The owner or operator of a regulated boiler may choose either a state inspector, a special inspector or, if it qualifies, its own inspector to conduct the required annual certificate inspection. Any one of these inspectors may certify a regulated boiler for an operating permit. Thus, certificate inspections are not a uniquely governmental function.

■ Further, as our supreme court has cautioned, the Indiana Tort Claims Act is a statute in derogation of the common law which must be strictly construed against limitations on the claimant's right to bring suit. *Hinshaw v. Board of Commissioners of Jay County* (1993), Ind., 611 N.E.2d 637, 639. "We will assume that the legislature is aware of the common law and intends to make no change therein beyond its

declaration either by express terms or unmistakable implication." *Id.*

Here, there is no express statutory declaration of immunity for special inspectors, and we cannot discern from an examination of the Tort Claims Act any implication that such immunity was intended. Nor can we conclude that the statutory provisions and administrative rules enacted to regulate boiler inspections demonstrate "clearly the intention of the Legislature" to recognize special inspectors as instrumentalities or employees of the State. *See Ayres*, 493 N.E.2d at 1237.

■ VerSteeg was not employed by the state, and other than the issuance of his license, his work as a special inspector was not directed, supervised or otherwise controlled by the state. We acknowledge that the inspection of boilers is a regulated activity in this state. However, control, or the right to control, is a precondition necessary to establish vicarious liability in tort. *White v. Galvin* (1988), Ind.App., 524 N.E.2d 802, 804. The state's regulation of special inspectors employed by private insurance companies to perform certificate inspections is too tenuous a statutory relationship to warrant immunity under the Tort Claims Act. *See Buckley v. Standard Investment Co.* (1992), Ind., 586 N.E.2d 843, 844 (board of trustees of utility, whose members were initially appointed by city, held not a governmental entity because city had no control over current makeup of board). Likewise, the mere fact that, following initiative taken by the boiler operator to renew its annual certificate, the state will accept an inspection made by a privately employed "special inspector" does not constitute the degree of control required to establish that the special inspector is acting on behalf of a governmental entity.

In sum, we hold that special inspectors are not state employees and that Hartford is not a governmental entity or instrumentality of the state entitled to immunity from liability. The legislature did not intend to extend governmental immunity under the Tort Claims Act to insurance com-

panies merely because they are engaged in insuring and inspecting boilers.

### B. Immunity under Indiana Code § 34–4–12.7–2

■ Hartford also asserts that, without regard to governmental immunity, it was immune from liability for VerSteeg's inspection as a matter of law under Indiana Code § 34–4–12.7–2, which provides:

(a) No act or omission in the making of an inspection in connection with the issuance or renewal of a policy of casualty or fire and marine insurance subjects an insurer or its:

(1) Agents;

(2) Employees; or

(3) Service contractors;

to civil liability for any injury, death, or loss.

(b) The exemption from civil liability in subsection (a) does not apply to:

(1) Any injury, loss, or death that:

(A) Occurs during an inspection; and

(B) Is proximately caused by the negligence of the insurer or its agent, employee, or service contractor;

(2) An inspection that is required under a written service contract; or

(3) Any injury, loss, or death · proximately caused by an act or omission that constitutes:

(A) A criminal offense;

(B) Gross negligence; or

(C) Willful or wanton misconduct.

Hartford had issued a casualty insurance policy which covered the boiler, and Hartford argues that VerSteeg inspected the boiler both in connection with the issuance or renewal of its policy and the issuance of a new certificate as required by law. Hartford reasons that the dual purpose of VerSteeg's inspection does not defeat Hartford's immunity under Indiana Code § 34–4–12.7–2. Hartford maintains, in effect, that Indiana Code § 34–4–12.7–2 provides blanket immunity for an insurance company acting as an inspection agency because all certificate inspections are also inspec-

tions made in connection with the issuance or renewal of an insurance policy.

We cannot accept Hartford's characterization of VerSteeg's inspection as an inspection made "in connection with the issuance or renewal" of a casualty insurance policy. Hartford relies solely upon VerSteeg's statement that if he inspects a boiler and determines that a boiler is unsafe, then he recommends that the policy be cancelled or not be reissued until the unsafe condition is corrected. *See* Record at 932–33; Appellee's Brief at 42–43.

However, there is other abundant and compelling evidence in VerSteeg's testimony which refutes Hartford's characterization of the inspection as an insurance inspection. VerSteeg's inspection occurred on July 18, 1989, but Hartford's three-year policy which covered the boiler did not expire until October 10, 1991, more than two years later. *See* Record at 1607. VerSteeg also admitted that he did not send the results of his inspection to underwriting at Hartford. Record at 1026. VerSteeg's inspection report did not state that the inspection was made to renew the Hartford policy. Rather, his report stated that it was a certificate inspection for an operating permit, and VerSteeg testified that Hartford sent the report to the State. Record at 969, 970 (Defendant's Exhibit 2) and 1027.

Hartford's policy itself distinguishes between inspections conducted for insurance purposes and certificate inspections. The policy provides in Paragraph D "Inspections and Surveys" under the "Common Policy Conditions" that Hartford reserves the right, but is not obligated, to make inspections. Record at 1594 (Paragraph D). The policy then states "[w]e do not make safety inspections" and expressly disclaims any warranty that a boiler's condition complies with applicable laws, regulations, codes or standards. Record at 1594. Certificate inspections conducted pursuant to rules adopted by the Indiana Boiler and Pressure Vessel Board are safety inspections. *See* IND.ADMIN.CODE tit. 680, r. 1–1–1 (1992) ("regulations contained herein shall be understood to set forth rules for

safeguarding life, limb and property"). Thus, Hartford's own policy, which expressly disclaims that any inspections Hartford performs as an insurer are safety inspections, confirms that a certificate inspection and an insurance inspection are not made for the same purpose. Indiana Code § 34–4–12.7–2 does not provide blanket immunity to insurance companies performing boiler inspections.[5]

The brief portion of VerSteeg's testimony relied upon by Hartford is insufficient to overcome the other facts established through his testimony and the express disclaimer in Hartford's policy. Considering all the evidence, which we must when the question of immunity is presented, it is apparent that VerSteeg did not inspect the Mid–States boiler in connection with the issuance or renewal of insurance, and that, as a matter of law, Hartford was not entitled to immunity for the inspection under Indiana Code § 34–4–12.7–2.

## CONCLUSION

Hartford is not immune from liability for VerSteeg's purported negligence in inspecting the boiler which injured Logestan. VerSteeg was not an employee of the State of Indiana. Neither was his inspection made in connection with the issuance or renewal of an insurance policy. The question of immunity in Instruction Nos. 3, 4 and 17 should not have been submitted to the jury. In the absence of immunity, this case should proceed to trial on the elements of negligence. *See Peavler,* 528 N.E.2d at 46–47. We reverse and remand for a new trial.

Reversed and remanded.

CHEZEM, J., concurs.

ROBERTSON, J., dissents with opinion.

ROBERTSON, Judge, dissenting.

I agree with the majority that Hartford is not entitled to immunity under the Indiana Tort Claims Act but I reach that conclusion by a slightly different route. I must respectfully dissent, however, because I am convinced that by the enactment of Ind.Code 34–4–12.7–2, the legislature has immunized Hartford from liability for mere negligence in the making of an inspection conducted, at least in part, for purposes of casualty insurance renewal.

The Indiana Tort Claims Act provides immunity from liability for a loss resulting from an inadequate or negligent inspection which has been made to determine whether property complies with or violates any law or contains a hazard to health or safety. I.C. 34–4–16.5–3(11). The ITCA extends immunity to either a governmental entity or an employee acting within the scope of the employee's employment. *Id.* Hartford is neither a "governmental entity" nor an "employee" as defined by the ITCA.

A "governmental entity" is defined as the State of Indiana or one of ten qualifying political subdivisions of the State. I.C. 34–4–16.5–2(c), (f). A private insurance company/inspection service is not one of the governing units, public institutions, or state agencies particularly named. See I.C. 34–4–16.5–2(g), (h).

Governmental entities implicitly entitled to immunity under the ITCA typically are either created directly by the State, so as to constitute a department or administrative arm of the government, or are administered by individuals who are controlled by public officials and responsible to such officials or the general public. *World Production v. Capital Improvement Board of Managers of Marion County* (1988), Ind. App., 514 N.E.2d 634, 637, *trans. denied.* Thus, accountability is one factor which distinguishes a governmental entity. *See id.; Buckley v. Standard Investment Co.* (1991), Ind., 581 N.E.2d 920, *correcte·· ɔn rehearing,* 586 N.E.2d 843.

The nature of the function performed by the entity has also been a factor which serves to identify a governmental entity. Instrumentalities within the scope of the ITCA perform functions which are unique-

---

5. Similarly, Hartford's claim of blanket immunity under the Tort Claims Act fails because, as we have already concluded, neither VerSteeg nor Hartford are state employees or governmental entities.

ly governmental in nature and which have traditionally been exclusively provided by the government. They are not merely private enterprises independently contracted to fulfill a governmental duty. *See e.g. Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229; *Clement v. Stone* (1988), Ind.App., 524 N.E.2d 36, *trans. denied* (pursuit and arrest of suspected felon).

Hartford does not meet any of these criteria. It has not been created by the legislature as an arm of State government or to provide a uniquely governmental service and it is ultimately accountable only to its shareholders. And, while the permitting process established by I.C. 22–15–6 attempts to ensure that certain minimum safety standards have been met by all operating boilers, the system is essentially one of self-regulation. The State defers to the judgment of licensed professionals employed either by the insurer or the owner/operator and exercises virtually no oversight. If an insurer/inspection agency refuses to insure the risk associated with a particular boiler, the State will not authorize its operation unless the owner/operator obtains a certificate inspection from another insurer or qualifies as an inspection agency itself and posts a bond. Like a public utility, an inspection agency has some of the trappings of a governmental entity, but none of the essential features.

Hartford maintains that, inasmuch as its employee was a special inspector as that term is defined by the applicable regulation, 680 IAC 1–1–2(6), and was acting on behalf of the State at the time of the inspection, its inspector was an employee entitled to immunity under the ITCA, and that immunity extends to Hartford by reason of the doctrine of respondeat superior. The express language of the ITCA precludes such an interpretation of the legislation.

First, while it is true that, for purposes of the ITCA, an "employee" is one who "presently or formerly act[s] on behalf of a governmental entity whether temporarily or permanently," "with or without compensation," I.C. 34–4–16.5–2(b), an "employee"

expressly does not include an independent contractor or an agent or employee of an independent contractor. *Id.* In Indiana, the right or ability to control has long been the decisive precondition to vicarious liability in tort, *White v. Galvin* (1988), Ind.App., 524 N.E.2d 802, 804, and has served to distinguish an independent contractor from an employee. *See Nash v. Meguschar* (1949), 228 Ind. 216, 91 N.E.2d 361; *Prest–O–Lite Co. v. Skeel* (1914), 182 Ind. 593, 106 N.E. 365; *Dallas Moser Transporters, Inc. v. Ensign* (1992), Ind.App., 594 N.E.2d 454, 456. Under Indiana common law,

> where one lets a contract to another to do a particular work, reserving to himself no control over such work except the right to require it to conform to a particular standard when completed, he is not liable for the negligence of the party to whom the contract is let. An independent contractor is one exercising an independent employment under a contract to do certain work by his own methods, without subjection to the control of his employer except as to the product or result of the work. When the person employing may prescribe what shall be done, but not how it is to be done, or who is to do it, the person so employed is a contractor and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer, does not render the person contracted with to do the work a servant.

*Prest–O–Lite Co. v. Skeel,* 182 Ind. at 597, 106 N.E. 365.

That the State is interested solely in the result of the inspection, i.e. the operation of safe boilers, is readily apparent from the legislative design of the inspection and permitting process. The State has adopted certain minimum standards "for the construction, installation, inspection and repair of boilers and unfired pressure vessels" to be independently applied by the industry itself and its insurers, with only an annual report or the fact of insurance sufficing as proof of compliance. See 680 IAC 1–1–1 (Standards intended to cover only "certain fundamental features of construction,"

"leav[ing] number of details to judgment of designers and inspectors"). The office of the building commissioner has only the power to see that the standards are met by those who have control over the operation of boilers; ·the State has reserved no control over the means and methods of attaining those standards.

To the extent, then, that the State can be said to be an employer because it has allowed Hartford to perform the work of ascertaining whether boilers in the State of Indiana meet minimum safety standards, the legislature has made Hartford an independent contractor as that term has traditionally been defined by Indiana common law. The legislature has expressly stated that, as an independent contractor, neither Hartford nor its employee is immune from civil liability for the negligent performance of an inspection. Where, as here, the relevant facts are undisputed, Hartford's status as an independent contractor can and should have been determined as a matter of law by the court. *Detrick v. Midwest Pipe & Steel, Inc.* (1992), Ind.App., 598 N.E.2d 1074, 1075.

Moreover, Instruction No. 17 was designed to state the law of sovereign immunity as codified by the ITCA, not the common law doctrine of the borrowed servant. The second paragraph of the instruct repeats the language of I.C. 34–4–16.5–3(11). In addition, the instruction was supplemented with an instruction which selectively paraphrases the definition of employee contained in the ITCA. The instruction does not inform the jury that a servant can serve two masters at the same time or instruct the jury to determine whether the employee has abandoned its service to one of its masters. The borrowed servant doctrine would relieve Hartford of civil liability only if its employee's service· to the State necessarily involved the abandonment of its service to Hartford. See *Johnson v. Motors Dispatch, Inc.* (1977), 172 Ind.App. 285, 360 N.E.2d 224, 228; *New York Central Railroad Co. v. Northern Indiana Public Service Co.* (1966), 140 Ind.App. 79, 85, 221 N.E.2d 442.

Despite the error in the giving of Instruction No. 17, I believe the jury's verdict in favor of Hartford should not be reversed or the matter retried because Hartford is immune from liability under a different section of the Indiana Code.

Indiana Code 34–4–12.7–2 provides Hartford immunity when an inspection is conducted for the purpose of renewal of a policy of casualty insurance, even when the inspection serves the additional purpose of certifying the boiler for operation in the state.

Indiana Code 34–4–12.7–2, which was enacted in 1983, provides:

(a) No act or omission in the making of an inspection in connection with the issuance or renewal of a policy of casualty or fire and marine insurance subjects an insurer or its:

(1) Agents;

(2) Employees; or

(3) Service contractors;

to civil liability for any injury, death, or loss.

(b) The exemption from civil liability in subsection (a) does not apply to:

(1) Any injury, loss, or death that:

(A) Occurs during an inspection; and

(B) Is proximately caused by the negligence of the insurer or its agent, employee, or service contractor;

(2) An inspection that is required under a written service contract; or

(3) Any injury, loss, or death proximately caused by an act or omission that constitutes:

(A) A criminal offense;

(B) Gross negligence; or

(C) Willful or wanton misconduct.

There seems to be no real dispute that the policy issued by Hartford to Mid–States on the risks associated with the boiler was a policy of casualty insurance. Casualty insurance typically covers accidental injury both to person and to property. 1 G. Couch, R. Anderson, & M. Rhodes, *Couch on Insurance 2d* § 1:30 (1982). Boiler insurance is a type of casualty insurance

covering damages to property of the insured or others for which the insured may be liable. *Id.* § 1:25, § 42:385. *See also* I.C. 27–1–13–14(a) (Casualty and liability insurance means insurance included in Class II and Class III of I.C. 27–1–5–1) and I.C. 27–1–5–1, Class 2(e) and Class 3(d).

The evidence offered at trial shows the inspection at issue to have been made by Hartford, at least in part, for the purpose of renewal of insurance. Hartford's inspector, Mr. VerSteeg, inspected Mid–States' boiler on July 18, 1989. The policy of insurance issued Mid–States by Hartford provided coverage to Mid–States for the period of October 10, 1988, to October 10, 1991. Pursuant to the terms of the policy, Hartford was required to notify its insured at least 45 days before the anniversary date of the policy, here by August 26, 1989, if it decided not to renew the policy. Mr. VerSteeg testified that the inspection was conducted "because they [Mid–States] wanted their boiler inspected and reinsured." R. 876. VerSteeg stated specifically that the inspection was intended to serve two purposes: insurability and issuance of a certificate of operation. R. 1007.

Indiana Code 22–15–6–2(b) provides that if a permit is issued by an insurance company acting under I.C. 22–15–6–4, and the applicant ceases to insure the boiler covered by the permit, the permit terminates. Thus, as Mr. VerSteeg testified, a certificate inspection and an inspection conducted in connection with the renewal of insurance are one and the same.

The majority disagrees with me over the effect of these facts, characterizing the evidence favorable to its result as more "abundant and compelling." Op. at 833. Certainly, the evidence I have recited is substantial evidence of probative value which would support a determination by a preponderance of the evidence that the inspection was conducted, at least in part, for purposes of renewal. Accordingly, the central issue posed by this case is whether the legislature intended to immunize acts or omissions in the making of an inspection when the inspection has, as a distinct but corollary purpose, the certification of an object for operation.

With certain explicit exceptions which I will address momentarily, I.C. 34–4–12.7–2 expressly relieves an insurer from liability for acts or omissions "in the making of an inspection in connection with" the issuance or renewal of casualty, fire or marine insurance. The statute does not state that the inspection must be made solely in connection with the issuance or renewal of insurance. Yet, the parties appear to agree that inspections made by an insurer solely for the purpose of determining insurability fall within the zone of immunity provided by the statute. Such inspections are typically undertaken wholly for the benefit of the insurer and are limited in scope to the objective to be served by the inspection, namely, the advisability of indemnifying the insured for a particular risk.

It makes sense to limit an insurer's liability for an inspection which is circumscribed in scope and intended solely for the insurer's benefit. The common law does so. Apart from the duty which all actors owe to each other when they undertake an affirmative line of conduct, that is, to take precautions which are reasonably necessary to protect others from injury from that conduct and to refrain from doing anything unreasonably dangerous, F. Harper, F. James & O. Gray, *The Law of Torts* § 18.6 (1986), the common law imposes no obligation on an actor to come to the aid of another who is in peril, even if the actor, in the exercise of ordinary care, should realize that action on his part is necessary for another's aid or protection. *Perry v. Northern Indiana Public Service Co.* (1982), Ind.App., 433 N.E.2d 44, 49. This rule applies unless the actor, by contract or conduct, assumes a duty of care where one otherwise would not exist. *Id.* A duty may arise where one undertakes gratuitously, or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, and the actor's failure to exercise reasonable care increases the risk of harm, the harm is suffered because

of the reliance of the other or third person upon the undertaking, or the actor has undertaken to perform a duty owed by the other to the third person. *Id.* at 50.

In construing a statutory provision, this court must consider the statute as an entirety, with each part being viewed not as an isolated fragment but with reference to all the other companion provisions. To effect the legislature's intent, we must construe an ambiguous statute in a manner consistent with other sections of the enactment. *Hinshaw v. Board of Commissioners of Jay County* (1993), Ind., 611 N.E.2d 637, 639. When I examine the immunity conferred by subsection (a) and the three express exceptions in conjunction with the common law, I can only conclude that the legislature intended to provide an insurer immunity for inspections made in connection with the issuance or renewal of casualty insurance even when the inspection takes on the gratuitous purpose of benefiting the plaintiff or other persons.

Exception (b)(1) speaks to the general rule at common law that one who undertakes an affirmative line of conduct must use ordinary care in so acting. Subsections (b)(3)(A) and (C) are merely aspects of that general common law rule, that one who engages in unreasonably dangerous conduct and who thereby greatly magnifies the risk of harm to others will not escape responsibility for that behavior. The second express exception, I.C. 34–4–12.7–2(b)(2), addresses in part the common law duty of assumption of risk, i.e, where an actor by contract, consents to and assumes the duty of another to the plaintiff.

This brings me to the last exception, I.C. 34–4–12.7–2(b)(3)(B): an injury, loss or death proximately caused by an act or omission constituting gross negligence. Were the grant of immunity given by I.C. 34–4–12.7–2(a) intended merely to codify the common law rule of nonliability for the failure to come to the aid or protection of others, the exception for gross negligence would be otiose. If at common law an insurer has no liability for failing to exercise reasonable care beyond that required of all actors, he may be negligent and even grossly negligent in the performance of the undertaking without legal consequence.

Consequently, I am convinced that the exception to immunity established in subsection (b)(3)(B) was intended to address the situation where an insurer gratuitously undertakes an inspection in connection with the issuance or renewal of insurance which is necessary for the protection of the plaintiff, and harm is suffered because others have relied upon the exercise of ordinary care in the performance of the inspection and have foregone other remedies or precautions which would reduce the risk of harm. Under such circumstances, common law liability would be imposed because reliance on the inspection injects the prospect of new danger into the situation, as in the present case, where the insurer is actively in the business of gratuitously providing "certificate" inspections and has provided the inspection as part of the benefit exchanged with the contract of insurance. Such an inspection has the trappings of a reliable safety inspection; it is required for operation and must be performed by licensed professionals who have been qualified by the State to conduct the inspections.

The legislature's objective in providing immunity under these circumstances emerges from the statute as a whole: operational safety of objects which are the subject of casualty, fire and marine insurance can best be achieved by discouraging owner/operator reliance upon the acts of its insurer. The reason in such a policy is evident here where the explosion of a boiler is an event which, though perhaps infrequent, is often avoidable and highly expectable, so much so that it is not a risk against which the Indiana General Assembly has authorized a company to insure. *See* I.C. 27–1–5–1, Class 3(d)(1). But the immunity granted for "safety" inspections which are gratuitously undertaken in connection with the issuance or renewal of insurance is not without limitation. By permitting recovery for gross negligence in the making of such an inspection, the legislature has revived a duty to act for the protection of others when the failure to so act would be a gross injustice. The statute therefore does not entitled Hartford to the so-called "blanket immunity" referred to by the majority, but immunity for mere negligence.

In reaching the conclusion that the immunity extended by I.C. 34–4–12.7–2 applies whenever an inspection is conducted in connection with the issuance or renewal of casualty insurance, I am not unmindful of the rule of statutory construction that an enactment in derogation of the common law will be strictly construed against limitations on a claimant's right to bring suit. *Hinshaw*, 611 N.E.2d at 639. Nonetheless, in construing a statute, this court must presume that the legislature is aware of the common law. *Id.* The legislature has, by unmistakable implication, codified the common law, but modified the rule of liability for the gratuitous assumption of duty. It is our responsibility to give effect to the statute as we perceive the legislature to have intended it, even if the equities of a particular case cry out for a different result.

It is my belief that Hartford offered sufficient evidence of probative value to demonstrate that the inspection made of the boiler in question was done at least in part for purposes of renewal. Accordingly, I must agree with Hartford that error in the giving of Instruction No. 17, which I too believe to be erroneous, was harmless as Hartford is entitled to immunity as a matter of law and the case should never have been submitted to the jury.